**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| CORECO JA'QAN PEARSON, VIKKI TOWNSEND CONSIGLIO, GLORIA KAY GODWIN, JAMES KENNETH CARROLL, CAROLYN HALL FISHER, CATHLEEN ALSTON LATHAM, and BRIAN JAY VAN GUNDY, | CIVIL ACTION FILE NO. 1:20-cv-04809-TCB |
| Plaintiffs, | |
| v. | |
| BRIAN KEMP, in his official capacity as Governor of Georgia, BRAD RAFFENSPERGER, in his official capacity as Secretary of State and Chair of the Georgia State Election Board, DAVID J. WORLEY, in his official capacity as a member of the Georgia State Election Board, REBECCA N. SULLIVAN, in her official capacity as a member of the Georgia State Election Board, MATTHEW MASHBURN, in his official capacity as a member of the Georgia State Election Board, and ANH LE, in her official capacity as a member of the Georgia State Election Board, | |
| Defendants. | |

**MOTION TO INTERVENE AND INCORPORATED BRIEF IN SUPPORT**

COME NOW THE DEMOCRATIC PARTY OF GEORGIA, INC., the DSCC, and the DCCC (collectively, the "Democratic Political Party Committees" or "Proposed Intervenors") by and through their undersigned counsel of record, and file this *Motion to Intervene and Incorporated Brief in Support* in the above-referenced matter. Intervention is appropriate under Federal Rule of Civil Procedure 24(a) and (b) for the following reasons.

## I.   INTRODUCTION

On November 20, 2020, Governor Brian Kemp and Secretary of State Brad Raffensperger certified the election results showing that former Vice President Joe Biden—the Democratic Party's nominee for President—won the presidential race in Georgia. This certification followed an unprecedented hand recount in Georgia which "upheld and reaffirmed" President-Elect Biden's victory.[1] Georgia officials are also currently recounting the ballots again in a machine recount at the request of President Trump's reelection campaign.

Plaintiffs ask this Court to disregard the will of the voters—whose votes will be counted at least *three times*—and enter an extraordinary order decertifying the

---

[1] *See Historic results of first statewide audit of paper ballots upholds result of presidential race*, Ga. Sec'y of State, https://sos.ga.gov/index.php/elections/historic_first_statewide_audit_of_paper_ball ots_upholds_result_of_presidential_race (Nov. 19, 2020).

results showing that President-Elect Biden won the state of Georgia and unilaterally "requiring Governor Kemp to transmit certified election results that state that President Donald Trump is the winner of the election." Compl. ¶ 211(3). Plaintiffs' Complaint was filed more than three weeks *after* the general election, and five days *after* Georgia certified the results.

In support of their unprecedented request to overturn a certified election that will be fully counted at least three times, Plaintiffs proffer debunked conspiracy theories, wild speculation, and unsupported allegations of procedural improprieties recycled from other unsuccessful lawsuits. The Democratic Political Party Committees—whose candidates and voters will both be severely and irreparably injured if the election results are discarded as Plaintiffs request—have an undeniable interest in this litigation and should be granted intervention.

## II.   BACKGROUND

On November 3, 2020, Georgians voted in one of the most scrutinized elections in recent history, one that yielded record turnout amid an ongoing pandemic. The election followed nearly a month and a half of absentee early voting. After all the votes were counted, President-Elect Joe Biden was declared to have won the presidential election in the state of Georgia by approximately 13,500 votes.

On November 11, the Secretary announced that for the first time, Georgia would conduct a statewide, hand recount of the presidential election. On November 19, the Secretary announced that the recount reaffirmed President-Elect Biden's victory, with the final tally only shifting by under 1,300 votes. The next day, the Secretary and the Governor certified the election results. On November 24, Georgia began to count its ballots for a third time at the request of the Trump campaign, this time in a machine recount. Results from the machine recount are due December 2, 2020.

Despite widespread acknowledgement that no fraud occurred, *see, e.g.*, Nick Corasaniti et al., *The Times Called Officials in Every State: No Evidence of Voter Fraud*, N.Y. Times (Nov. 10, 2020), https://www.nytimes.com/2020/11/10/us/politics/voting-fraud.html, various lawsuits have been filed in around the country and in Georgia in an attempt to sow confusion and cast doubt on the legitimacy of the election.[2] Some of the counsel

---

[2] *See also Secretary Raffensperger announces completion of voting machine audit using forensic techniques: no sign of foul play*, Ga. Sec'y of State, https://sos.ga.gov/index.php/elections/secretary_raffensperger_announces_complet ion_of_voting_machine_audit_using_forensic_techniques_no_sign_of_foul_play (Nov. 17, 2020); *Joint statement from elections infrastructure government coordinating council & the election infrastructure sector coordinating executive committees*, Cybersecurity & Infrastructure Sec. Agency, https://www.cisa.gov/news/2020/11/12/joint-statement-elections-infrastructure-

representing the Plaintiffs in this case have also filed a nearly identical federal lawsuit in Michigan. *See King et al. v. Whitmer et al.*, 20-cv-13134 (E.D. Mich. Nov. 25, 2020). Additionally, a lawsuit alleging similar improprieties and conspiracy theories (in which one of Plaintiffs' counsel here, L. Lin Wood, Jr., was the named plaintiff) was filed more than two weeks ago here in the Northern District of Georgia, in which the court denied the plaintiff's motion for a Temporary Restraining Order. *See* Op. & Order, *Wood v. Raffensperger et al.*, No. 20-cv-04651, ECF No. 54 at 37 (N.D. Ga. Nov. 19, 2020) (denying plaintiff L. Lin Wood, Jr.'s claim for emergency injunctive relief in part because plaintiff "cannot show a likelihood of success on the merits").

Plaintiffs seek to revive these rejected claims in this case, including once again challenging a March 6, 2020 Settlement Agreement between the Democratic Political Party Committees and the Secretary and members of the State Board of Elections (the "Board"), pursuant to which the Secretary and the Board engaged in official rulemaking and issued guidance intended to increase uniformity in processing absentee ballot signatures, as well as notice and cure procedures.[3]

---

government-coordinating-council-election (Nov. 12, 2020) ("There is no evidence that any voting system deleted or lost votes, changed votes, or was in any way compromised.").

[3] *See* Compl. ¶¶ 51–54, 59 (mentioning Settlement Agreement); *see also* ¶¶ 18, 167, 181, 191, 211(7), 211(9) (discussing signature requirements generally).

Plaintiffs' claims have been further embellished, however, with an even grander alleged conspiracy spanning the globe from all corners of the United States to China, Iran, Pakistan, Serbia, and Venezuela.[4] Plaintiffs apparently do not notice the irony inherent in their Complaint: while failing to provide evidence of a massive conspiracy to disenfranchise millions of Americans, their suggested remedy would explicitly disenfranchise millions of their fellow Georgians who voted in November. *See* Compl. ¶ 211(3) (requesting the Court ignore Georgia's election results and unilaterally order Governor Kemp declare Donald Trump "the winner of the election").

The Democratic Political Party Committees are entitled to intervene as of right. The Democratic Party of Georgia is the Democratic Party's official state party committee for the State of Georgia, and its mission is to elect Democratic Party candidates to offices across Georgia, up and down the ballot.  The DSCC and the DCCC are the national party committees dedicated to electing candidates of the Democratic Party to the U.S. Congress, including specifically in and from Georgia. Both the candidates that the Democratic Political Party Committees support and the voters among their membership and with whom they affiliate will be irreparably and

---

[4] Nearly half of Plaintiffs' exhibits here are largely or completed copied from *Wood*. *See* ECF Nos. 1-1, 1-7, 1-10, 1-11, 1-12, 1-14, 1-15, 1-16, 1-17, 1-18, 1-19, 1-20, 1-22, 1-25.

severely injured if the election is not certified or the results are discarded. Moreover, the Settlement Agreement that Plaintiffs now challenge was the result of litigation brought by the Democratic Political Parties themselves. As a result, they easily meet the criteria for intervention.

### III.   ARGUMENT

**A.   This Court should grant the motion to intervene as of right.**

The Democratic Political Party Committees qualify for intervention as of right. Intervention as of right must be granted when (1) the motion to intervene is timely; (2) the proposed intervenors possess an interest in the subject matter of the action; (3) denial of the motion to intervene would affect or impair the proposed intervenors' ability to protect their interests; and (4) the proposed intervenors' interests are not adequately represented by the existing parties to the lawsuit. Fed. R. Civ. P. 24(a)(2); *Georgia v. U.S. Army Corps of Eng'rs*, 302 F.3d 1242, 1250 (11th Cir. 2002). The Democratic Political Party Committees satisfy each of these factors.

#### 1.   The motion to intervene is timely.

The Democratic Political Party Committees' motion is timely. Plaintiffs filed their Complaint on November 25, 2020, and an Emergency Motion for Declaratory Relief on November 27, 2020. *See* ECF Nos. 1, 6. This motion follows within days

after the filing of the Complaint, before any significant public action on the merits on either the Complaint or the Emergency Motion has occurred in the case. As there has been no delay, there is no risk of prejudice. *See Chiles v. Thornburgh*, 865 F.2d 1197, 1213 (11th Cir. 1989). The Democratic Political Party Committees have read and are prepared to comply with the briefing schedules the Court set in its November 29 temporary restraining order concerning forensic inspection of Dominion voting machines (ECF No. 14) and its November 30 order concerning the claims in Plaintiff's complaint (ECF No. 17), and to participate in the hearing scheduled for December 4 (or any others scheduled), without delay.

While there will be no prejudice to the existing parties if intervention is granted, the Democratic Political Party Committees will be *severely* prejudiced if not allowed to intervene. Not only will their candidates and voters suffer irreparable harm, the Democratic Political Party Committees were signatories to the Settlement Agreement that Plaintiffs now attempt to collaterally attack. As such, they will suffer prejudice if their request to intervene is denied because they will be unable to protect their own interests in the Settlement Agreement or that of their constituents, members, or candidates. *See id.* (analyzing whether a motion to intervene is timely and considering "the extent of prejudice to the [proposed intervenors] if their motion is denied").

### 2. The Democratic Political Party Committees have a strong interest in this litigation.

The Democratic Political Party Committees have significant and cognizable interests in intervening in this case. Among other unprecedented relief sought, Plaintiffs ask this Court to either (1) invalidate all 1.3 million absentee votes in the November 3, 2020 election, or (2) order the Governor, the Secretary, and the Board to decertify the results of the presidential election—disenfranchising all of the voters who cast ballots of any kind—and declare, by judicial fiat, their preferred candidate is the winner of the election. *See* Compl. ¶¶ 210–11. Should Plaintiffs be granted their requested relief, the Democratic Political Party Committees' supported candidates would lose lawfully cast votes and their members would be disenfranchised. They have a clear interest in avoiding this result.

"The right to vote includes the right to have the ballot counted," *Reynolds v. Sims*, 377 U.S. 533, 555 n.29 (1964), and courts have repeatedly held that where proposed relief carries with it the prospect of disenfranchising a political party's members, the party has a legally cognizable interest at stake. *See, e.g.*, Minute Entry, *Wood*, No. 20-cv-04651, ECF No. 52 (granting Proposed Intervenors' motion to intervene in factually similar lawsuit); *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 189 n.7 (2008) (agreeing with unanimous view of the Seventh Circuit that the Indiana Democratic Party had standing to challenge a voter identification law

8

that risked disenfranchising its members); *Ne. Ohio Coal. for the Homeless v. Husted*, 696 F.3d 580 (6th Cir. 2012) (Ohio Democratic Party allowed to intervene in case where challenged practice would lead to disenfranchisement of its voters); *Stoddard v. Winfrey*, No. 20-014604-cz (Mich. Cir. Ct. Nov. 6, 2020) (granting intervention to Democratic National Committee in a lawsuit seeking to stop counting ballots in Detroit); Order, *Donald J. Trump for President, Inc. v. Boockvar*, No. 20-cv-2078 (M.D. Pa. Nov. 12, 2020), ECF No. 72 (granting intervention to Democratic National Committee in lawsuit seeking to invalidate ballots in Pennsylvania); Order, *Constantino v. City of Detroit*, No. 20-014789-AW (Mich. Cir. Ct. Nov. 13, 2020) (granting Michigan Democratic Party's motion to intervene).[5]

---

[5] While standing is not a separate consideration on a motion to intervene, courts have consistently recognized that political party committees have standing to advance claims to avoid the disenfranchisement of their members, thus recognizing their legitimate and cognizable interest in such claims. *See, e.g.*, *Crittenden*, 347 F. Supp. 3d at 1337 (holding Democratic Party of Georgia had standing to sue on behalf of its members to challenge the state's rejection of absentee ballots); *Sandusky County Democratic Party v. Blackwell*, 387 F.3d 565, 573–74 (6th Cir. 2004) (holding Ohio Democratic Party, among other local party organizations, had standing to sue on behalf of members who would vote in the upcoming election and whose provisional ballots may be rejected); *Fla. Democratic Party v. Hood*, 342 F. Supp. 2d 1073, 1079 (N.D. Fla. 2004) (holding Florida Democratic Party "has standing to assert, at least, the rights of its members who will vote in the November 2004 election"); *Fla. Democratic Party v. Scott*, 215 F. Supp. 3d 1250, 1254 (N.D. Fla. 2016) (holding Florida Democratic Party had standing to assert the rights of voters "who intended to register as Democrats and will be barred from voting" given the state's closure of voter registration); *Texas Democratic Party et al. v. Hughs*, No. SA-20-CV-08-OG,

The Democratic Political Party Committees, whose candidate is the certified winner of the presidential election in Georgia, have an interest in ensuring that the results of the election are not decertified. *See Texas Democratic Party v. Benkiser*, 459 F.3d 582, 588 (5th Cir. 2006) ("[A]fter the primary election, a candidate steps into the shoes of his party, and their interests are identical.").

Finally, because this litigation also purports to attack the Settlement Agreement, the Democratic Political Party Committees are quintessential "real parties in interest in the transaction which is the subject of the proceeding." *Chiles*, 865 F.2d at 1214. A decision by the Court directly holding the Settlement Agreement is unconstitutional or indirectly invalidating the Settlement Agreement will indisputably impede the ability of the Democratic Political Party Committees to realize their interest in that agreement. *See Turn Key Gaming, Inc. v. Oglala Sioux Tribe*, 164 F.3d 1080, 1081–82 (8th Cir. 1999) (finding interest requirement "easily satisfie[d]" where "[t]he disposition of the lawsuit . . . may require resolution of legal and factual issues bearing on the validity of [] agreements" in which proposed

---

2020 WL 4218227, at *4–5 (W.D. Tex. July 22, 2020) (at the motion to dismiss stage, holding Texas Democratic Party, DCCC, and DSCC had adequately alleged associational standing on behalf of their members who will be registering to vote); *DSCC and DCCC v. Simon*, No. 62-CV-20-585, Dkt. No. 83 at *18 (Minn. Dist. Ct. July 28, 2020) (at motion to dismiss stage, holding DSCC and DCCC had adequately pled associational standing on behalf of their "members, constituents, canvassers, and volunteers" who wished to engage in voter assistance).

intervenor had interests); *see also Georgia v. U.S. Army Corps of Eng'rs*, 302 F.3d at 1258 (granting intervention where proposed intervenor had a contractual interest in the dispute and "[b]ecause a final ruling in this case may adversely impact [proposed intervenor's] ongoing lawsuit against" defendant); *In re Bayshore Ford Truck Sales, Inc.*, 471 F.3d 1233, 1246 (11th Cir. 2006) (intervention is proper where proposed intervenor "anchor[s] its request in the dispute giving rise to the pending lawsuit . . . [and] demonstrate[s] 'an interest relating to the property or transaction which is the subject of the action.'" (citation and emphasis omitted)).

> **3.   Disposition of this matter would impair the Democratic Political Party Committees' ability to protect their interests as a practical matter.**

The Democratic Political Party Committees' legally-cognizable interests will also be impaired by the disposition of this lawsuit if intervention is not granted, for at least four reasons.

First, the Democratic Political Party Committees have an interest in preventing the infringement of millions of their members' constitutional right to vote. Plaintiffs seek to decertify or reverse the election via judicial fiat, which threatens the Democratic Political Party Committees' members right to vote. "[T]o refuse to count and return the vote as cast [is] as much an infringement of that

personal right as to exclude the voter from the polling place." *United States v. Saylor*, 322 U.S. 385, 387–88 (1944).

Second, the disruptive and potentially disenfranchising effects of Plaintiffs' action would require Proposed Intervenors to divert resources to safeguard the certified statewide results, thus implicating another of their protected interests. *See, e.g.*, *Husted*, 837 F.3d at 624 (finding concrete, particularized harm where organization had to "redirect its focus" and divert its "limited resources" due to election laws); *Crawford v. Marion Cnty. Election Bd.*, 472 F.3d 949, 951 (7th Cir. 2007) (concluding that electoral change "injure[d] the Democratic Party by compelling the party to devote resources" that it would not have needed to devote absent new law), *aff'd*, 553 U.S. 181 (2008); *Democratic Nat'l Comm. v. Reagan*, 329 F. Supp. 3d 824, 841 (D. Ariz. 2018) (finding standing where law "require[d] Democratic organizations . . . to retool their [get-out-the-vote] strategies and divert [] resources"), *rev'd on other grounds sub nom. Democratic Nat'l Comm. v. Hobbs*, 948 F.3d 989 (9th Cir. 2020) (en banc); *see also Issa v. Newsom*, No. 20-cv-01044-MCE-CKD, 2020 WL 3074351, at *3 (June 10, 2020) (granting intervention and citing this protected interest). The Democratic Political Party Committees have spent millions of dollars getting out the vote and supporting their candidates in the 2020

12

general election; overturning the election's results will undermine and undo all of that work and investment.

Third, Plaintiffs seek to disrupt the certification of lawfully cast ballots and cast doubt on the legitimacy of the election of Proposed Intervenors' candidates. Courts have often concluded that such interference with a political party's electoral prospects constitutes a legally cognizable injury. *See, e.g.*, *Benkiser*, 459 F.3d at 586–87 (recognizing that "harm to [] election prospects" constitutes "a concrete and particularized injury"); *Owen v. Mulligan*, 640 F.2d 1130, 1132 (9th Cir. 1981) (holding that "the potential loss of an election" is sufficient injury to confer Article III standing). In circumstances where political parties have faced even lesser risks of harm to their electoral prospects and mission, courts have routinely granted intervention. *See, e.g.*, Order, *Democratic Party of Ga., Inc. v. Crittenden*, No. 18-cv-5181 (N.D. Ga. Nov. 14, 2018), ECF No. 40 (granting intervention to political party in voting rights lawsuit); Order, *Parnell v. Allegheny Bd. of Elections*, No. 20-cv-01570 (W.D. Pa. Oct. 22, 2020), ECF No. 34 (granting intervention to DCCC in lawsuit regarding processing of ballots); Order, *Paher v. Cegavske*, No. 20-cv-00243-MMD-WGC, 2020 WL 2042365, at *4 (D. Nev. Apr. 28, 2020), ECF No. 39 (granting DNC intervention in election case brought by conservative interest group); *Donald J. Trump for President, Inc. v. Murphy*, No. 20-cv-10753 (MAS) (ZNQ),

2020 WL 5229209, at *1 (D. N.J. Sept. 1, 2020) (granting DCCC intervention in lawsuit by Republican candidate and party entities); *Cook Cnty. Republican Party v. Pritzker*, No. 20-cv-4676 (N.D. Ill. Aug. 28, 2020), ECF No. 37 (granting DCCC intervention in lawsuit by Republican party entity); *Issa*, 2020 WL 3074351, at *3 (granting DCCC and California Democratic Party intervention in lawsuit by Republican congressional candidate); Order, *Donald J. Trump for President v. Bullock*, No. 20-cv-66 (D. Mont. Sept. 08, 2020), ECF No. 35 (granting DCCC, DSCC, and Montana Democratic Party intervention in lawsuit by four Republican party entities); *cf. DCCC v. Ziriax*, No. 20-CV-211-JED-JFJ, 2020 WL 5569576, at *2 (N.D. Okla. Sept. 17, 2020) ("DCCC and the Democratic candidates it supports . . . have an interest in ensuring that Democratic voters in Oklahoma have an opportunity to express their will regarding Democratic Party candidates running for elections."); *Owen*, 640 F.2d at 1132 (holding "the potential loss of an election" is sufficient injury to confer Article III standing).

Fourth, as noted above, Plaintiffs' requested relief threatens to overturn an agreement to which the Democratic Political Party Committees are parties, impairing their ability to realize their interest in that agreement. *See supra* at 4–5, 7, 10–11.

14

Here, the requested remedy and harm is extreme—Plaintiffs seek relief that would not just burden the Democratic Political Party Committees' voters but would completely disenfranchise them by overturning the results of an election in which their preferred candidate has been certified as the winner.

### 4. The Democratic Political Party Committees' interests are not adequately represented by the existing parties.

While the Governor, Secretary, and election officials have undeniable interests in defending the state's laws and their exercises of authority pursuant to those laws, the Democratic Political Party Committees have different focuses: ensuring that they and their members' fundamental rights are protected, and that their members' eligible and legally cast votes are counted.

Although a would-be intervenor has some burden to establish that its interest is not adequately protected by the existing parties to the action, "the burden of making that showing should be treated as minimal," and it is sufficient "if the applicant shows that representation of his interest 'may be' inadequate." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n. 10 (1972) (citing 3B J. Moore, Federal Practice 24.09—1 (4) (1969)); *Chiles*, 865 F.2d at 1214. Especially where one of the parties to the suit is a government entity whose "views are necessarily colored by its view of the public welfare rather than the more parochial views of a

proposed intervenor whose interest is personal to it," courts have found that "the burden [of establishing inadequacy of representation] is comparatively light." *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 972 (3d Cir. 1998) (citing *Conservation Law Found. of New Eng., Inc. v. Mosbacher*, 966 F.2d 39, 44 (1st Cir. 1992), and *Mausolf v. Babbitt*, 85 F.3d 1295, 1303 (8th Cir. 1996)); *see also Meek v. Metro. Dade Cnty., Fla.,* 985 F.2d 1471, 1478 (11th Cir. 1993), *abrogated on other grounds by Dillard v. Chilton Cnty. Comm'n*, 495 F.3d 1324 (11th Cir. 2007) ("Any doubt concerning the propriety of allowing intervention should be resolved in favor of the proposed intervenors because it allows the court to resolve all related disputes in a single action.").

Here, while Defendants have an interest in defending the actions of state officials, the Democratic Political Party Committees have different objectives: ensuring that the valid ballot of every Democratic voter in Georgia is counted and safeguarding the election of Democratic candidates. Courts have "often concluded that governmental entities do not adequately represent the interests of aspiring intervenors." *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 736 (D.C. Cir. 2003); *accord Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 899 (9th Cir. 2011) ("[T]he government's representation of the public interest may not be 'identical to the individual parochial interest' of a particular group just because 'both

16

entities occupy the same posture in the litigation.'" (quoting *WildEarth Guardians v. U.S. Forest Serv.*, 573 F.3d 992, 996 (10th Cir. 2009))). That is the case here. Proposed Intervenors have specific interests and concerns—from their overall electoral prospects to the most efficient use of their limited resources—that neither Defendants nor any other party in this lawsuit share. *See Paher*, 2020 WL 2042365, at *3 (concluding that "Proposed Intervenors . . . have demonstrated entitlement to intervene as a matter of right" where they "may present arguments about the need to safeguard [the] right to vote that are distinct from [state defendants'] arguments").

The fact that Defendants cannot represent the interests of the Democratic Political Party Committees is underscored by the fact that many of the Defendants were their direct adversaries in the Settlement Agreement. The Settlement Agreement was the product of a lawsuit brought by the Democratic Political Party Committees against the Secretary, Board members, and others. It was the result of arms-length negotiations and a balancing of the parties' distinct interests. Where a "case is disposed of by settlement rather than by litigation, what the state perceives as being in its interest may diverge substantially from" the interests of proposed intervenors. *Mille Lacs Band of Chippewa Indians v. State of Minn.*, 989 F.2d 994, 1001 (8th Cir. 1993). As one court recently explained while granting intervention under similar circumstances:

> Although Defendants and the Proposed Intervenors fall on the same side of the [present] dispute, Defendants' interests in the implementation of the [challenged law] differ from those of the Proposed Intervenors. While Defendants' arguments turn on their inherent authority as state executives and their responsibility to properly administer election laws, the Proposed Intervenors are concerned with ensuring their party members and the voters they represent have the opportunity to vote in the upcoming federal election … and allocating their limited resources to inform voters about the
>
> election procedures. As a result, the parties' interests are neither "identical" nor "the same."

*Issa*, 2020 WL 3074351, at *3 (citation omitted). Such is the case here.

Because the particular interests of the Democratic Political Party Committees are not shared by the present parties, they cannot rely on Defendants or anyone else to provide adequate representation. They have thus satisfied the four requirements for intervention as of right under Rule 24(a)(2). *See id.* at *3–4; *Issa*, 2020 WL 3074351, at *4.

## B.    Proposed Intervenors are also entitled to permissive intervention.

If the Court does not grant intervention as a matter of right, the Democratic Political Party Committees respectfully request that the Court exercise its discretion to allow them to intervene under Rule 24(b). The Court has broad discretion to grant a motion for permissive intervention when it determines that: (1) the proposed intervenors' claim or defense and the main action have a question of law or fact in common, and (2) the intervention will not unduly delay or prejudice the adjudication

of the original parties' rights. *See* Fed. R. Civ. P. 24(b)(1)(B) and (b)(3); *Chiles*, 865 F.2d at 1213; *Ga. Aquarium, Inc. v. Pritzker*, 309 F.R.D. 680, 690 (N.D. Ga. 2014). Even where courts find intervention as of right may be denied, permissive intervention may nonetheless be proper or warranted. Moreover, "the claim or defense clause of Rule 24(b)(2) is generally given a liberal construction." *Id*. The Democratic Political Party Committees easily meet these requirements.

First, the Democratic Political Party Committees' claims and defenses will inevitably raise common questions of law and fact because they seek to defend the constitutional right to vote of all the eligible voters who cast valid ballots in the November 3 general election. *See Franconia Minerals (US) LLC v. United States*, 319 F.R.D. 261, 268 (D. Minn. 2017) ("Thus, applicant['s] claims and the main action obviously share many common questions of law and perhaps of fact."); *see also supra* at 8, 11.

Second, for the reasons set forth above, the motion to intervene is timely, and given the early stage of this litigation, intervention will not unduly delay or prejudice the adjudication of the rights of the original parties. The Democratic Political Party Committees are prepared to proceed in accordance with the schedule this Court determines, and intervention will only serve to contribute to the complete development of the factual and legal issues before the Court.

## IV.   CONCLUSION

For these reasons, the Democratic Political Party Committees respectfully request that the Court grant their motion to intervene.

Dated: November 30, 2020.             Respectfully submitted,

**<u>Adam M. Sparks</u>**
Halsey G. Knapp, Jr.
Georgia Bar No. 425320
Joyce Gist Lewis
Georgia Bar No. 296261
Susan P. Coppedge
Georgia Bar No. 187251
Adam M. Sparks
Georgia Bar No. 341578
KREVOLIN AND HORST, LLC
One Atlantic Center
1201 W. Peachtree Street, NW, Ste. 3250
Atlanta, GA 30309
Telephone: (404) 888-9700
Facsimile: (404) 888-9577
hknapp@khlawfirm.com
jlewis@khlawfirm.com
coppedge@khlawfirm.com
sparks@khlawfirm.com

Marc E. Elias*
Amanda R. Callais*
PERKINS COIE LLP
700 Thirteenth Street NW, Suite 800
Washington, DC 20005
Telephone: (202) 654-6200
melias@perkinscoie.com
acallais@perkinscoie.com

Kevin J. Hamilton*
Amanda J. Beane*
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101
Telephone: (206) 359-8000

21

khamilton@perkinscoie.com
abeane@perkinscoie.com

Matthew J. Mertens*
Georgia Bar No: 870320
PERKINS COIE LLP
1120 NW Couch Street, 10th Floor
Portland, Oregon 97209
Telephone: (503) 727-2000
mmartens@perkinscoie.com

*Counsel for Proposed Intervenor-
Defendants*

*\*Pro Hac Vice Application Forthcoming*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| CORECO JA'QAN PEARSON, VIKKI TOWNSEND CONSIGLIO, GLORIA KAY GODWIN, JAMES KENNETH CARROLL, CAROLYN HALL FISHER, CATHLEEN ALSTON LATHAM, and BRIAN JAY VAN GUNDY, <br><br> Plaintiffs, <br><br> v. <br><br> BRIAN KEMP, in his official capacity as Governor of Georgia, BRAD RAFFENSPERGER, in his official capacity as Secretary of State and Chair of the Georgia State Election Board, DAVID J. WORLEY, in his official capacity as a member of the Georgia State Election Board, REBECCA N. SULLIVAN, in her official capacity as a member of the Georgia State Election Board, MATTHEW MASHBURN, in his official capacity as a member of the Georgia State Election Board, and ANH LE, in her official capacity as a member of the Georgia State Election Board, <br><br> Defendants. | CIVIL ACTION FILE NO. 1:20-cv-04809-TCB |

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing document has been prepared in accordance with the font type and margin requirements of L.R. 5.1, using font type of Times New Roman and a point size of 14.

Dated: November 30, 2020.        **<u>Adam M. Sparks</u>**
*Counsel for Proposed Intervenor-Defendants*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| CORECO JA'QAN PEARSON, VIKKI TOWNSEND CONSIGLIO, GLORIA KAY GODWIN, JAMES KENNETH CARROLL, CAROLYN HALL FISHER, CATHLEEN ALSTON LATHAM, and BRIAN JAY VAN GUNDY,<br><br>　　　　　Plaintiffs,<br><br>v.<br><br>BRIAN KEMP, in his official capacity as Governor of Georgia, BRAD RAFFENSPERGER, in his official capacity as Secretary of State and Chair of the Georgia State Election Board, DAVID J. WORLEY, in his official capacity as a member of the Georgia State Election Board, REBECCA N. SULLIVAN, in her official capacity as a member of the Georgia State Election Board, MATTHEW MASHBURN, in his official capacity as a member of the Georgia State Election Board, and ANH LE, in her official capacity as a member of the Georgia State Election Board,<br><br>　　　　　Defendants. | CIVIL ACTION FILE NO. 1:20-cv-04809-TCB |

**CERTIFICATE OF SERVICE**

I hereby certify that on November 30, 2020, I electronically filed the foregoing

with the Clerk of the Court using the CM/ECF system, which will send a notice of

electronic filing to all counsel of record.

Dated: November 30, 2020.                    **Adam M. Sparks**
                                             *Counsel for Proposed Intervenor-*
                                             *Defendants*