IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA, ATLANTA DIVISION

| | |
|---|---|
| CORECO JA'QAN PEARSON, VIKKI TOWNSEND CONSIGLIO, GLORIA KAY GODWIN, JAMES KENNETH CARROLL, CAROLYN HALL FISHER, CATHLEEN ALSTON LATHAM and BRIAN JAY VAN GUNDY,<br>Plaintiffs,<br>v.<br>BRIAN KEMP, in his official capacity as Governor of Georgia, BRAD RAFFENSPERGER, in his official capacity as Secretary of State and Chair of the Georgia State Election Board, DAVID J. WORLEY, in his official capacity as a member of the Georgia State Election Board, REBECCA N. SULLIVAN, in her official capacity as a member of the Georgia State Election Board, MATTHEW MASHBURN, in his official capacity as a member of the Georgia State Election Board, and ANH LE, in her official capacity as a member of the Georgia State Election Board,<br>Defendants. | CASE NO.<br><br>1:20-cv-4809-TCB |

**PLAINTIFFS' RESPONSE TO MOTION TO INTERVENE OF THE DEMOCRATIC PARTY OF GEORGIA, INC., THE DSCC, AND THE DCCC**

Come now the Plaintiffs and submit the following response to the motion to intervene of the Democratic Party of Georgia, Inc., the DSCC and the DCCC (collectively, the "Proposed Intervenors").

The motion to intervene should be denied because the Proposed Intervenors do not have a significantly protectable interest under the

particular circumstances of this case, because their interests are adequately represented by the State Defendants, and because their entry in this case as parties is intended to delay its resolution until it is moot.

## I.  INTERVENTION AS OF RIGHT

### 1.  CLAIMED INTEREST TO INTERVENE

The Proposed Intervenors cite authority for the proposition that political parties and party organizations have a legally cognizable interest based upon their associational standing to challenge registration and election laws and regulations they claim disenfranchise their voters. *See* Motion and Brief of Proposed Intervenors, at pp. 8-10. This case is distinct from those relied upon by the Proposed Intervenors because several of the Plaintiffs here are presidential electors and have clear standing to challenge fraud and illegality in the presidential election under *Carson v. Simon*, 978 F.3d 1051 (8th Cir. 2020), in which presidential electors were the plaintiffs. Regarding the injury-in-fact requirement, the Eighth Circuit held:

> As candidates, the Electors argue that they have a cognizable interest in ensuring that the final vote tally accurately reflects the legally valid votes cast. An inaccurate vote tally is a concrete and particularized injury to candidates such as the Electors. The Secretary's use of the consent decree makes the Electors' injury certainly-impending, because the former necessarily departs from the Legislature's mandates. Thus, the Electors meet the injury-in-fact requirement.

*Id*. at 1058. The Eighth Circuit held the Elector plaintiffs also met the causation and redressability requirements of standing:

> Next, the Electors meet the causal-connection requirement because the injury flows from the challenged conduct (the Secretary's policy). And, even though the Secretary and the Alliance do not appear to challenge the redressability requirement, it is likely that the requested relief (an injunction) will redress the injury (an inaccurate vote tally) because the former will mitigate the latter.

*Id*. Therefore, the Elector plaintiffs had constitutional standing and were found to have prudential standing as well.

The Proposed Intervenors are not presidential Electors and therefore do not meet the injury-in-fact, causation, or redressability elements of standing to be considered under Rule 24 intervention standards. *Chiles v. Thornburgh*, 865 F.2d 1197, 1212–13 (11th Cir. 1989), *citing, inter alia, Donaldson v. United States*, 400 U.S. 517, 531, 91 S.Ct. 534, 542, 27 L.Ed.2d 580 (1971); *Howard v. McLucas*, 782 F.2d 956, 959 (11th Cir.1986); *Athens Lumber Co., Inc. v. Federal Election Commission*, 690 F.2d 1364, 1366 (11th Cir.1982) ("[an interest under Rule 24(a)(2) means a "significantly protectable interest . . . for an intervenor's interest must be a particularized interest rather than a general grievance that requires evaluation of standing cases. . . that are relevant to help define the type of interest that the intervenor must assert."). Here, the Proposed Intervenors have not demonstrated that their interests would be substantially impaired if they were not permitted to intervene.

3

The DSCC is the Democratic Senatorial Campaign Committee and the DCCC is the Democratic Congressional Campaign Committee. They are the Proposed Intervenors under a variant of the Willie Sutton Rule - that's where the money is. Yet having the money to finance a litigation war across the United States does not without more establish a concrete interest sufficient to support standing. This litigation concerns a presidential election. The Proposed Intervenors did not nominate former Vice President Joe Biden for President. That was the Democratic Party of the United States, which is not a Proposed Intervenor. *Jacobson v. Florida Secretary of State*, 974 F.3d 1236, 1250-1252 (11th Cir 2020).

Finally, the authorities that the Proposed Intervenors cite to in their Motion all deal with future elections and the effect of election laws and procedures on their prospects in such elections. This case stands on a different footing and should be analyzed according to its particular circumstances. *See e.g. Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977)("[if] the association seeks a declaration, injunction, or some other form of prospective relief, it can reasonably be supposed that the remedy, if granted, will inure to the benefit of those members of the association actually injured."). Unlike the *prospective* relief sought in the cases cited by the Proposed Intervenors, the relief sought in this case is *retrospective*. The candidates and their parties have finished campaigning

and their voters have voted. Therefore, the Proposed Intervenors' associational standing analysis no longer pertains. *See e.g. Donald J. Trump for President, Inc. v. Cegavske*, No. 220CV1445JCMVCF, 2020 WL 5626974, at *4 (D. Nev. Sept. 18, 2020)(relief sought on behalf of an association's member voters that "no more directly and tangibly benefits [them] than it does the public at large" insufficient to confer standing).

The Proposed Intervenors obviously have a strong rooting interest in the outcome of the presidential election, but no matter how ardent their interest may be in promoting their preferred candidate, it is not enough to establish the significantly protectable interest required to warrant intervention in this case under Rule 24. *Jacobson, id*.

The certification of statewide presidential election results lies with the Secretary of State and the Governor. The litigation over the propriety of this act also lies with them. Not everyone in the country who cares about the outcome, or even an association of such partisans, is entitled to intervene in this case.

    2.    TIMELINESS

Given the short time that has passed since the filing of the Complaint and the motion to intervene, the timeliness element of the intervention analysis under Rule 19 would normally be satisfied. However, as Einstein postulated, time is relative. This case is operating on an extraordinarily short

timeframe because of the constitutionally imposed deadlines for the formal vote of the Electoral College on December 14, 2020, and for the inauguration of the President on January 20, 2021. What would certainly have been timely in any other case is not timely here, despite the speed with which the Proposed Intervenors have moved, because time is so short in this case.

### 3.   PREJUDICE TO THE PLAINTIFFS

Proposed Intervenors make a related claim that Plaintiffs would suffer no prejudice from the proposed intervention. This is almost certainly not true, as it will be in the overwhelming interests of the Proposed Intervenors to employ imaginative stratagems of delay and obstruction in order to run out an already incredibly short clock.

### 4.   IMPAIRMENT OF INTERESTS

The Proposed Intervenors wax indignant at the possibility that millions of their supporters might be disenfranchised "by judicial fiat" if the Court grants Plaintiffs the relief they seek. But the Court would only invalidate the election and order de-certification if it were convinced by the evidence that the election was so corrupted by fraud and illegality as to be repugnant to the laws of Georgia and the Constitution of the United States. In that event, the Proposed Intervenors could have no legitimate or legally cognizable interest in imposing upon the Plaintiffs, the State of Georgia, or anyone else in America an election result that was infected by fraud and corruption.

The Proposed Intervenors also contend that absent intervention they might be forced to "divert resources to safeguard the certified statewide results, thus implicating another of their protected interests." The only possible way they can divert resources to this purpose at this point is by paying the six lawyers who have filed entries of appearance in this case to intervene on their behalf. "[N]either [DSCC] nor [DCCC] explained what activities the [they] would divert resources away from in order to spend additional resources on … as precedent requires." *Jacobson* at p. 1250 (collecting cases).

The election campaign is over and there is no more political campaigning to be done. Citing cases about campaign expenses is beside the point. Both political parties have spent vast sums on their respective campaigns. One of them is going to lose. Fearing that money might go to waste if one loses is not a legally cognizable interest to support intervention. Fearing that money might be lost if the election were set aside for fraud and illegality is not a legally protectible interest either. As the 11th Circuit held in *Jacobsen*, partisan interest alone is not enough to confer standing:

> An organization's general interest in its preferred candidates winning as many elections as possible is still a "generalized partisan preference[ ]" that federal courts are "not responsible for vindicating," no less than when individual voters assert an interest in their preferred candidates winning elections. *Gill*, 138 S. Ct. at 1933; *see also id*. at 1932 (rejecting a voter's "hope of achieving a Democratic majority in the legislature" as "a collective political

7

interest" that cannot establish standing). Harm to an organization's generalized partisan preferences describes only "a setback to [its] abstract social interests," which is insufficient to establish a concrete injury in fact. *Havens Realty*, 455 U.S. at 379, 102 S.Ct. 1114; see also \*1251 *Arcia v. Fla. Sec'y of State*, 772 F.3d 1335, 1342 (11th Cir. 2014) (requiring "a concrete and demonstrable injury, not an abstract social interest" for organizational standing (alteration adopted) (internal quotation marks omitted)).

974 F.3d at 1250-1251.

### 5. ADEQUATE REPRESENTATION

Proposed Intervenors claim their interests would not be adequately protected unless they are permitted to intervene. The State Defendants have certified the election results. They are vigorously defending that decision through highly capable and experienced attorneys from the State Attorney General's office. The Proposed Intervenors and their counsel should know, because that office has beaten them before. *See, e.g. Anderson v. Raffensperger*, ___ F.Supp.3d ___ (2020 WL 60480248 N.D. Ga.).

The cases cited to support the right to intervene in this case largely relate once again to upcoming elections, rather than a challenge to a concluded election. A rooting interest is not sufficient.

## II. PERMISSIVE INTERVENTION

The Proposed Intervenors next argue in the alternative for permissive intervention. Despite the usual liberal construction of permissive intervention, the risk of prejudice to the Plaintiffs from delays instituted by the Proposed Intervenors is excessive. If their claimed interest is no more

8

than "to defend the constitutional right to vote of all of the *eligible voters* who cast *valid ballots* in the November 3 general election," brief, p. 19 (emphasis added), they should intervene on the side of the Plaintiffs, because that is all we seek as well. Unfortunately, the evidence shows strongly and clearly that at a *minimum* tens of thousands of flagrantly illegal and fraudulent absentee ballots were cast and counted, that the signature match requirement was abolished de facto, and that enormous statistical anomalies are present in the results that are almost impossible absent malign intervention through ballot stuffing or hacking of the election system computers. Moreover, there is evidence of illegal after-hours non-public counting of ballots at State Farm Arena that further taints this election beyond redemption. The evidence shows illegal and fraudulent ballots were counted in sufficient numbers to place the outcome of the election in question. The election should therefore be invalidated according to the most basic principles of election law. Why the Proposed Intervenors want to prevent correction of this wrongdoing is obvious but of course left unsaid in a fog of lofty rhetoric.

Lastly, that the Proposed Intervenors desire to defend the Settlement Agreement challenged in this case does not provide a sufficient nexus to the claims of fraud and illegality in the gathering and tabulation of Presidential votes to warrant their intrusion into the litigation of those claims. *See SOSS2, Inc. v. United States Army Corps of Engineers*, 403 F. Supp. 3d 1233,

1240 (M.D. Fla. 2019) (the claimed interest to justify intervention must "be one which substantive law recognizes as belonging to or being owned by the [intervenor]."). Even if the Court were to accept the Proposed Intervenors' interest as a party to the Settlement Agreement as one in which permissive joinder might be appropriate, intervention should be limited to the issues concerning the validity of the Settlement Agreement rather than an open door to dog-pile its resources upon the Plaintiffs in aid of the Defendants that actually hold the legally cognizable interest in resisting the Plaintiffs' other claims. *See United States v. S. Fla. Water Mgmt. Dist.*, 922 F.2d 704, 707 (11th Cir. 1991) ("A nonparty may have a sufficient interest for some issues in a case but not others, and the court may limit intervention accordingly."); *Howard v. McLucas,* 782 F.2d 956, 960–61 (11th Cir.1986) (restricting intervenors to participation in the single, remedial issue for which they had "standing").

## CONCLUSION

Wherefore, Plaintiffs respectfully request that the Motion to Intervene of the Georgia Democratic Party, Inc., the Democratic Senatorial Campaign Committee, and the Democratic Congressional Campaign Committee be denied. In the alternative, Plaintiffs request that the Court limit intervention to issues concerning the validity of the Settlement Agreement at issue in this case.

Respectfully submitted, this 2nd day of December 2020.

/s Sidney Powell*
Sidney Powell PC
Texas Bar No. 16209700

2911 Turtle Creek Blvd, Suite 300
Dallas, Texas 75219
(214) 707-1775
*Application for admission pro hac vice
forthcoming

/s Howard Kleinhendler
NEW YORK BAR NO. 2657120

Howard Kleinhendler Esquire
369 Lexington Avenue, 12th Floor
New York, New York 10017
Office (917) 793-1188
Mobile (347) 840-2188
howard@kleinhendler.com
www.kleinhendler.com
(Admitted pro hac vice)

CALDWELL, PROPST & DELOACH, LLP

/s Harry W. MacDougald
Georgia Bar No. 463076

CALDWELL, PROPST & DELOACH, LLP
Two Ravinia Drive, Suite 1600
Atlanta, GA 30346
(404) 843-1956 – Telephone
(404) 843-2737 – Facsimile
hmacdougald@cpdlawyers.com

Counsel for Plaintiffs

The undersigned certifies that the foregoing document was prepared in 13-point Century Schoolbook font and in accordance with the margin and other requirements of Local Rule 5.1.

<u>/s Harry W. MacDougald</u>
Georgia Bar No. 463076

## CERTIFICATE OF SERVICE

This is to certify that I have on this day e-filed the foregoing Plaintiffs' Response to Motion to Intervene of the Democratic Party Of Georgia, the DSCC, and the DCCC with the Clerk of Court using the CM/ECF system which causes electronic service to be made upon all counsel of record.

This 2nd day of December 2020.

/s Harry W. MacDougald
Georgia Bar No. 463076

Caldwell, Propst & DeLoach, LLP
Two Ravinia Drive, Suite 1600
Atlanta, GA 30346
404-843-1956