# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| CORECO JA'QAN PEARSON, VIKKI TOWNSEND CONSIGLIO, GLORIA KAY GODWIN, JAMES KENNETH CARROLL, CAROLYN HALL FISHER, CATHLEEN ALSTON LATHAM and BRIAN JAY VAN GUNDY,<br><br>          Plaintiffs,<br><br>v.<br><br>BRIAN KEMP, in his official capacity as Governor of Georgia, BRAD RAFFENSPERGER, in his official capacity as Secretary of State and Chair of the Georgia State Election Board, DAVID J. WORLEY, in his official capacity as a member of the Georgia State Election Board, REBECCA N. SULLIVAN, in her official capacity as a member of the Georgia State Election Board, MATTHEW MASHBURN, in his official capacity as a member of the Georgia State Election Board, and ANH LE, in her official capacity as a member of the Georgia State Election Board,<br><br>          Defendants. | CIVIL ACTION FILE NO. 1:20-cv-04809-TCB |

## BRIEF IN SUPPORT OF MOTION TO DISMISS

# I.     INTRODUCTION

Since the 2020 general election, various groups and individuals—unwilling to accept President-elect Biden's victory—have filed baseless lawsuits attacking the election's legitimacy.[1] Plaintiffs' current suit, alleging a "scheme and artifice to defraud [] for the purpose of illegally and fraudulently manipulating the vote count to make certain the election of Joe Biden as President of the United States," doubles down on the unfounded conspiracy theories animating these post-election challenges. Compl. for Declaratory, Emergency & Permanent Injunctive Relief ("Compl."), ECF No. 1, ¶ 2. Plaintiffs' requested relief is both unprecedented and unbelievable—they ask the Court to invalidate *all* mail-in ballots, instruct Georgia officials to "de-certify" the election results, and order the Governor to certify results "that state that President Donald Trump, is the winner of the election." Compl. ¶¶

---

[1] Federal courts have soundly rejected every effort to challenge President-elect Biden's victory in cases raising similar claims. *See generally, e.g.*, *Donald J. Trump for President, Inc. v. Boockvar*, No. 4:20-CV-02078, 2020 WL 6821992 (M.D. Pa. Nov. 21, 2020), *aff'd*, No. 20-3371, ECF No. 91 (3d Cir. Nov. 27, 2020) (affirming district court's refusal to enjoin Pennsylvania from certifying election results based on similar equal protection claims); *Bognet v. Sec'y of Commonwealth*, No. 20-3214, 2020 WL 6686120 (3d Cir. Nov. 13, 2020) (affirming denial of preliminary relief based on equal protection claim premised on vote dilution by purportedly illegal ballots); *Wood v. Raffensperger*, No. 1:20-cv-04561-SDG, ECF No. 54 (N.D. Ga. Nov. 20, 2020) (rejecting plaintiffs' motion to enjoin Georgia from certifying election results based on similar equal protection claims).

210-11. As the Third Circuit observed three days ago in affirming dismissal of another lawsuit seeking to throw out a state's certified election results, "Voters, not lawyers, choose the President. Ballots, not briefs, decide elections." *Donald J. Trump for President, Inc. v. Secretary Commonwealth of Pennsylvania*, No. 20-3371, at 20 (3d Cir. Nov. 27, 2020). This Court should reject Plaintiffs' request to disenfranchise five million Georgians based on implausible allegations of electoral malfeasance. In fact, this suit advances the same contorted legal theories and thin (in some instances verbatim) factual foundations that this Court swiftly dismissed only days ago. Op. & Order, *Wood v. Raffensperger*, No. 1:20-cv-04561, ECF No. 54 at 12-15 (N.D. Ga. Nov. 20, 2020) (Grimberg, J.).

The Court should dismiss this case on multiple grounds. Plaintiffs lack Article III standing to bring their claims, and further lack prudential standing to assert the Georgia General Assembly's interests. Georgia law is clear that Plaintiffs' claim for an election contest cannot be heard in federal court. And Plaintiffs' extraordinary delay in bringing suit additionally means laches bars their claims. Any of these jurisdictional bars independently precludes this Court's adjudication of Plaintiffs' suit.

Even if this Court had jurisdiction, Plaintiffs' claims fail as a matter of law. Their allegations fall far short of federal pleading standards and fail to articulate any

constitutional or statutory violation. Finally, Plaintiffs' requested relief—an extraordinary judicial override of the State's democratic process—would violate the constitutional rights of millions of Georgians. Every other court confronted with similar efforts has promptly and properly rejected them. This Court should do the same.

## II.   BACKGROUND

### A.   The General Election

Nearly five million Georgians cast ballots in the November election. On November 11, Secretary of State Brad Raffensperger (the "Secretary") announced that an audit by statewide hand recount of the presidential election would take place. This audit confirmed the outcome of the presidential election in favor of President-elect Biden, and on November 20, the Secretary certified that President-elect Biden prevailed over President Trump by a margin of 12,670 votes. Compl. ¶ 23.

On November 22, President Trump requested a *third* count by machine, which is currently underway.[2] This recount should be completed by December 2.[3]

---

[2] Kate Brumback, *Georgia counties set to start recount requested by Trump*, Associated Press (November 23, 2020), https://apnews.com/article/election-2020-joe-biden-donald-trump-georgia-state-elections-352e729f14a243b98fdefda94ff164ce.
[3] *Id.*

3

## B.      Prior and Ongoing Litigation

Less than three weeks ago, Lin Wood (who represents Plaintiffs in this lawsuit) filed his *own* lawsuit in this Court, asserting claims that bear a striking resemblance to those Plaintiffs press here. *Wood v. Raffensperger et al*., Case No. 1:20-cv-04651-SDG, ECF No. 5. In that case, Wood contends that the Secretary and the State Election Board performed their roles in an unconstitutional manner by entering into a settlement agreement with Proposed Intervenors in a separate federal litigation over eight months ago (the "Settlement Agreement"). *Id.* at 24, 29. The Settlement Agreement articulated uniform, statewide procedures for matching signatures on absentee ballot envelopes and curing deficiencies on the same. *See* ECF No. 5-1 at 2-4 (setting forth substantive terms of agreement between Proposed Intervenors and Defendants). Its dictates were the subject of an extended and public notice and comment process.[4] Wood also contends the Secretary and the State Election Board violated the due process rights of Republican election monitors during the hand recount. *Id.* at 32.

---

[4] *See* Ga. Comp. R. & Regs. 183-1-14-.13 (amended March 22, 2020); Ga. Comp. R. & Regs. 183-1-14-.13 (May 21, 2020); Ga. Comp. R. & Regs. 183-1-14-.13 (Aug. 31, 2020).

On November 20, the Hon. Steven D. Grimberg resoundingly rejected Wood's request for a temporary restraining order, finding that he lacked standing to assert these claims, ECF No. 54 at 12-19; his claims were barred by the doctrine of laches, *id.* at 19-23; and he failed to carry his burden on even one of the four requisite factors necessary to justify the temporary restraining order he sought, *id.* at 24-38. Wood appealed the denial, and the matter remains ongoing.

A separate lawsuit was filed on November 25 in Fulton County Superior Court by a John Wood, styled as an election contest, and raising many of the same claims regarding the Settlement Agreement, absentee voting, and purported inclusion of illegal votes, in addition to unsupported conspiracy claims regarding funds from a non-profit to certain counties to assist with voting. *See Wood v. Raffensperger et al.,* Pet. Election Contest, Fulton County Civil Action No. 2020CV342959 (November 25, 2020). The lawsuit names the Secretary and Governor as defendants. *Id.*

### C.    Plaintiffs' Lawsuit

In a transparent attempt to sidestep Wood's first failed bite at this apple, and on the same day the election contest was filed in Fulton County, Plaintiffs filed this Complaint on November 25—over three weeks after the general election and five days after Georgia officials certified the election results. Plaintiffs' 100-page complaint is disjointed, but its gist is that Georgia election officials are engaged in

an elaborate international conspiracy to "fraudulently manipulat[e] the vote count to make certain the election of Joe Biden as President of the United States." Compl. ¶ 2.

The Complaint borrows heavily from the "factual" allegations that this Court found inadequate in *Wood*, re-filing eleven affidavits from that case. It complains, again, about the constitutionality of the Settlement Agreement (*see, e.g., id.* ¶ 136) and about lack of adequate access during the hand recount of the presidential election results (*see, e.g., id.* ¶ 157).  Plaintiffs additionally "support" the Complaint with "expert" declarations written for other lawsuits, concerning entirely different issues, often in different states. *See id*. ¶¶ 8, 10, 147-148*; see also* ¶ 2 n.1.

From these incredible factual allegations, Plaintiffs allege various causes of action: ostensible violations of the Elections and Electors Clauses, Compl. ¶¶ 132-142, Equal Protection Clause, *id.* ¶¶ 143-167, Due Process Clause, *id.* ¶¶ 168-181, and "wide-spread ballot fraud", *id.* ¶¶ 182-207. Among many other requests, Plaintiffs ask this Court to order Defendants to "decertify" the election for President-elect Biden and to affirmatively certify results "in favor of President Donald Trump." *Id*. ¶ 208-211.

### III.   LEGAL STANDARD

"The doctrine of standing asks whether a litigant is entitled to have a federal court resolve his grievance. This inquiry involves 'both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise.'" *Kowalski v. Tesmer*, 543 U.S. 125, 128-29 (2004) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). For a party to have standing, it must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Muransky v. Godiva Chocolatier, Inc.*, No. 16-16486 & 16-16783, 2020 WL 6305084, at *4 (11th Cir. Oct. 28, 2020). Prudential considerations require "that a party '[]must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.'" *Kowalski*, 543 U.S. at 129.

To survive a 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Plausibility is the key, as the well-pled allegations must nudge the claim across the line from conceivable to plausible." *Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327, 1333 (11th Cir. 2010) (internal quotations omitted). Where a complaint expressly alleges "fraud," Rule 9(b) requires pleading with "particularity." This pleading standard requires at a

7

minimum that a plaintiff alleges "facts as to time, place, and substance of the defendant's alleged fraud, specifically the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them.'" *U.S. ex rel. Matheny v. Medco Health Sols., Inc.*, 671 F.3d 1217, 1222 (11th Cir. 2012).

## IV.   LEGAL ARGUMENT

### A.   Plaintiffs lack standing.

Plaintiffs lack Article III standing to bring any of their constitutional claims and further lack prudential standing to bring their Elections and Electors Clause claim.

### 1.   Plaintiffs lack standing to assert Elections and Electors Clause claims (Count I).

Plaintiffs lack standing to bring a claim under the Elections and Electors Clause. Their recurring grievance is that Defendants allegedly did not follow Georgia law regarding absentee ballot signature verification, ballot cure, and timing requirements for processing absentee ballots. *See, e.g.,* ¶¶ 51-52, 62, 133-142. But "[t]his injury is precisely the kind of undifferentiated, generalized grievance about

the conduct of government that [courts] have refused to countenance in the past." *Lance*, 549 U.S. at 442.[5]

Plaintiffs mistakenly contend that they have standing under *Carson v. Simon*, 978 F.3d 1051 (8th Cir. 2020), which held that Minnesota's presidential electors were "candidates" in the general election and thus could bring an Electors Clause challenge to the validity of a Minnesota election-related consent decree. But Georgia, unlike Minnesota, differentiates between "candidates" and "presidential electors." *See, e.g.,* O.C.G.A. § 21-2-499(b) (describing the Secretary's certification of election results for the *candidates* for state and federal public office, on the one hand, and election results for the *slate of presidential electors*, on the other).

And in any event, *Carson* is a lone outlier and not binding on this Court. Other federal courts have repeatedly held that even candidates for office lack Article III standing to challenge alleged violations of state law under the Elections Clause. *See*

---

[5] Courts have routinely found that the Electors Clause and Elections Clause share "considerable similarity" and may be interpreted in the same manner. *Ariz. State Leg. v. Ariz. Indep. Redistricting Comm'n*, 576 U.S. 787, 839 (2015) (Roberts, C.J., dissenting); *Bognet*, 2020 WL 6686120, at *7 (applying same test for standing under both Elections Clause and Electors Clause); *Donald J. Trump for President, Inc. v. Bullock*, No. CV 20-66-H-DLC, 2020 WL 5810556, at *11 (D. Mont. Sept. 30, 2020) ("As an initial matter, the Court finds no need to distinguish between the term 'Legislature' as it is used in the Elections Clause as opposed to the Electors Clause."). *Wood v. Raffensperger*, No. 1:20-cv-04561, ECF No. 54 at 15 n.24 (N.D. Ga. Nov. 20, 2020).

9

*e.g.*, *Bognet*, 2020 WL 6686120, at *6-7 (finding that voters and candidate lacked Article III standing to bring claims under Elections and Electors Clauses); *Hotze v. Hollins*, No. 4:20-CV-03709, 2020 WL 6437668 at *2 (S.D. Tex. Nov. 2, 2020) (holding candidate lacked standing under Elections Clause and concluding that Supreme Court's cases "stand[s] for the proposition that only the state legislature (or a majority of the members thereof) have standing to assert a violation of the Elections Clause.").

Plaintiffs also lack prudential standing to bring their Elections and Electors Clauses claim. "Even if an injury in fact is demonstrated, the usual rule"—applicable here—"is that a party may assert only a violation of its own rights." *Virginia v. Am. Booksellers Ass'n*, 484 U.S. 383, 392 (1988). Plaintiffs' Count I, by contrast, "rest[s] . . . on the legal rights or interests of third parties,'" *Kowalski v. Tesmer*, 543 U.S. 125, 129 (2009). Plaintiffs' Elections and Electors Clause claims "belong, if they belong to anyone, only to the [Georgia] General Assembly." *Bognet*, 2020 WL 6686120, at *7; *see* Compl. ¶ 135 (alleging "Defendants are not part of the General Assembly and cannot exercise legislative power"). Plaintiffs have no authority to assert the rights of the General Assembly.

### 2. Plaintiffs lack standing to assert an equal protection claim (Counts II and III).

Plaintiffs have not stated plausible equal protection claims. Plaintiffs allege they are harmed by violations of Georgia law that "diluted" their votes. *See* Compl. ¶ 156. But this purported injury of vote-dilution-through-unlawful balloting has been repeatedly rejected as a viable basis for standing, and for good reason: any purported vote dilution somehow caused by counting allegedly improper votes would affect *all* Georgia voters and candidates, not just Plaintiffs, and therefore constitutes a generalized grievance insufficient for standing. *See, e.g.*, *Bognet*, 2020 WL 6686120, at *11–14 (rejecting identical theory for standing and explaining that "[t]his conceptualization of vote dilution—state actors counting ballots in violation of state election law—is not a concrete harm under the Equal Protection Clause of the Fourteenth Amendment"); *Moore v. Circosta*, No. 1:20-cv-911, 2020 WL 6063332, a *14 (M.D.N.C. Oct. 14, 2020) ("[T]he notion that a single person's vote will be less valuable as a result of unlawful or invalid ballots being cast is not a concrete and particularized injury in fact necessary for Article III standing."). Indeed, just days ago this Court rejected an identical claim on standing grounds. *See Wood v. Raffensperger,* No. 1:20-cv-04561, ECF No. 54 at 16 (N.D. Ga. Nov. 20, 2020) ("As Wood conceded during oral argument, under his theory any one of

Georgia's more than seven million registered voters would have standing to assert these claims. This is a textbook generalized grievance.").

### 3. Plaintiffs lack standing to assert a due process claim (Count IV).

For similar reasons, Plaintiffs cannot establish standing on their due process claim, which appears to assert that Georgia elections officials failed to adequately verify signatures on absentee ballots. Compl. ¶¶ 180-181.  Plaintiffs' objection, in other words, is that Defendants failed to follow Georgia election law. This is once again a generalized grievance insufficient to satisfy Article III. *Lance*, 549 U.S. at 440–41; *see also Nolles v. State Comm. for Reorganization of Sch. Dists.*, 524 F.3d 892, 900 (8th Cir. 2008) (voters lacked standing to allege substantive due process claim regarding implementation of new election law where they failed to allege particularized injury).

### B. The Court lacks jurisdiction over Plaintiffs' election contest claim (Count V).

Plaintiffs' Count V—in which Plaintiffs purport to state a claim under Georgia's election contest statute—cannot proceed in federal court. An election contest "article shall be tried and determined by the superior court of the county where the defendant resides . . ." O.C.G.A. § 21-2-523(a).

### C.   Plaintiffs' claims are barred by the equitable doctrine of laches.

Plaintiffs' extraordinary delay in filing suit is inexcusable and bars their claims. Laches bars a claim when "(1) there was a delay in asserting a right or a claim, (2) the delay was not excusable, and (3) the delay caused [the defendant] undue prejudice." *United States v. Barfield*, 396 F.3d 1144, 1150 (11th Cir. 2005). Federal courts routinely apply laches to bar untimely claims for injunctive relief in election cases.  *See, e.g., Sanders v. Dooly Cnty., Ga.*, 245 F.3d 1289, 1291 (11th Cir. 2001) (concluding "that the district court did not abuse its discretion in deeming the claims seeking injunctive relief to be laches-barred" in elections context).  Each element of laches is satisfied here.

*First*, Plaintiffs delayed considerably in asserting these claims. On March 6, 2020, Proposed Intervenors, the Secretary, and the Board executed the Settlement Agreement, which was entered on the public docket. It has since been in effect for at least three elections. Over eight months later—*after* over one million voters cast their absentee ballots in the general election, *after* Governor Kemp certified the slate of presidential electors, and *after* Wood lost his first attempt at litigating these issues—Plaintiffs now challenge the terms of the Settlement Agreement as unconstitutional, and their equal protection and Elections and Electors Clause-related grievances about Defendants' conduct flow from this document. Plaintiffs

13

"could have, and should have, filed [their] constitutional challenge much sooner than [they] did, and certainly not two weeks *after* the General Election." *Wood v. Raffensperger,* No. 1:20-cv-04561, ECF No. 54 at 20-21 (N.D. Ga. Nov. 20, 2020). Moreover, Plaintiffs seek to challenge decisions related to voting machines that have been heavily litigated for years, including well before the 2020 general election (*see, e.g., Curling v. Raffensperger*, No. 1:17-CV-2989-AT, 2020 WL 5994029 (N.D. Ga. Oct. 11, 2020)), and signature matches on absentee ballots that were separated from their envelopes weeks ago.[6] Plaintiffs have waited until well past the eleventh hour to challenge the processes of which they now complain.

*Second*, Plaintiffs have not articulated any reasonable excuse for their prolonged delay. Waiting to file this lawsuit solely because their preferred candidate lost in Georgia, as Plaintiffs appear to have done, is not a valid excuse. *See Wood,*. No. 1:20-cv-04561, ECF No. 54 at 21 ("[Plaintiffs'] claims are constitutional challenges . . . and [even if] valid, these claims should not depend on the outcome

---

[6] Notably, the Eleventh Circuit stayed even minor changes concerning the use of paper poll books on Election Day and ordered by the District Court weeks in advance. *See Curling v. Sec'y of State for Georgia*, No. 20-13730-RR, 2020 WL 6301847 (11th Cir. Oct. 24, 2020). Certainly, the sweeping requests that Plaintiffs seek *after* the election results have been certified are too late.

14

of any particular election, to wit, whether [Plaintiffs'] preferred candidates won or lost.").

*Third*, as this Court has already found in *Wood*, "Defendants, [Proposed] Intervenors, and the public at large would be significantly injured if the Court were to excuse [Plaintiffs'] delay." *Id.* at 22. Plaintiffs' requested relief would further "disenfranchise a substantial portion of the electorate and erode the public's confidence in the electoral process," weighing heavily in favor of laches. *Id.*; *see also Arkansas United v. Thurston*, No. 5:20-cv-5193, 2020 WL 6472651, at *5 (W.D. Ark. Nov. 3, 2020) ("[T]he equities do not favor intervention where the election is already in progress and the requested relief would change the rules of the game mid-play.").The doctrine of laches bars Plaintiff's claims.

## D.   Plaintiffs fail to state a claim upon which relief can be granted.

Even if this Court had jurisdiction to consider Plaintiffs' claims, their Complaint should be dismissed under Rule 12(b)(6) as they fail to state plausible claims for relief.

### 1.   Plaintiffs' claims are simply not plausible

Under the Federal Rules, plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. While Rule 8 "does not require 'detailed factual allegations,' [] it demands more than an unadorned, the-

15

defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). The shortcomings in Plaintiffs' Complaint are particularly stark considering Rule 9(b), which applies to allegations of fraud. "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).

Plaintiffs fail to meet the standards of Rule 8, much less Rule 9(b). Plaintiffs' theory is that a Republican governor and Republican secretary of state, both avowed supporters of President Trump, helped advance a "massive fraud" because they "purchased and rushed into use" voting machines made by Dominion (Compl. ¶ 4), which is a company created exclusively to ensure election-rigging so that "Venezuelan dictator Hugo Chavez never lost another election" (*id.* ¶ 5), which thereby allowed Iran and China to manipulate the general election to ensure President-elect Biden's victory (*id.* ¶ 111), apparently in cahoots with Georgian elections officials who forged "pristine" fraudulent ballots for Biden (*id.* ¶ 153). The Supreme Court has instructed that "[d]etermining whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. It challenges both experience and common sense to accept Plaintiffs' overarching theory that widespread fraud occurred during the most scrutinized election in

modern history, particularly based on the allegations at bar. Under federal pleading standards, this Court need not credit Plaintiffs' specious inferences and conclusory allegations. Plaintiffs' Complaint should therefore be dismissed.

### 2. Plaintiffs have not pleaded a claim under the Election and Electors Clause.

Plaintiffs' Elections and Electors Clause claims are similarly unavailing. The Elections and Electors Clause vest authority in "the Legislature" of each state to regulate "[t]he Times, Places, and Manner of holding Elections for Senators and Representatives", U.S. Const. art. I, § 4, cl. 1., and to direct the selection of presidential electors, U.S. Const. art. II, § 1, cl. 2, respectively. The Supreme Court has held, however, that state legislatures can delegate this authority—including to state officials like the Secretary. *See, e.g.*, *Ariz. State Legislature*, 576 U.S. at 807 (noting that Elections Clause does not preclude "the State's choice to include" state officials in lawmaking functions so long as such involvement is "in accordance with the method which the State has prescribed for legislative enactments") (quoting *Smiley v. Holm*, 285 U.S. 355, 367 (1932)).

Pursuant to Georgia law, the Secretary is the chief election official for the State, O.C.G.A § 21-2-50(b); *see also Wood v. Raffensperger,* No. 1:20-cv-04561, ECF No. 54 at 30 (N.D. Ga. Nov. 20, 2020) (Grimberg, J.), and the General Assembly has granted him the power and authority to manage Georgia's election

17

system, including the absentee voting system. *See Fair Fight Action, Inc. v. Raffensperger*, 413 F.Supp.3d 1251 (N.D. Ga. 2019); Ga. Op. Att'y Gen. No. 2005-3 (Apr. 15, 2005) (recognizing the Secretary's authority to manage Georgia's election system). Additionally, the Secretary is the Chair of the Board, which is the governmental body responsible for uniform election practice in Georgia. O.C.G.A. § 21-2-31; *see also Curling v. Raffensperger*, 403 F. Supp. 3d 1311, 1345 (N.D. Ga. 2019) ("[T]he [] Board is charged with enforcing Georgia's election code under state law."). In both roles, the Secretary has significant statutory authority to set election standards. *See New Georgia Project v. Raffensperger*, No. 1:20-CV-01986-ELR, 2020 WL 5200930, at *8 (N.D. Ga. Aug. 31, 2020).

Plaintiffs fleetingly assert the "cure procedure" created as part of the Settlement Agreement violates the Electors and Elections Clause. *See* Compl. ¶ 136. But Judge Grimberg already rejected that theory. *See Wood*, No. 1:20-cv-04561, ECF No. 54 at 31 (rejecting Wood's Elections and Electors Clause claim because "[t]he Settlement Agreement is a manifestation of Secretary Raffensperger's statutorily granted authority"). Plaintiffs also compile a list of "legal infractions" but fail to tie those alleged infractions in any plausible way back to the Electors and Elections Clause.

### 3.      Plaintiffs have not pleaded an equal protection claim.

Plaintiffs have not stated cognizable equal protection claims. Counts II and III allege that Defendants "failed to comply with the requirements of the Georgia Election Code and thereby diluted the lawful ballots of the Plaintiffs[.]" Compl. ¶ 156 (Count II); *see also id.* ¶ 172 (alleging disparate treatment of Georgia voters results in the dilution of the vote). This is not an equal protection injury. Vote dilution is a viable basis for federal claims only in certain contexts, such as when laws structurally devalue one community's votes over another's. *See, e.g.*, *Bognet*, 2020 WL 6686120, at *11 ("[V]ote dilution under the Equal Protection Clause is concerned with votes being weighed differently."). But Plaintiffs' "conceptualization of vote dilution—state actors counting ballots in violation of state election law—is not a concrete harm under the Equal Protection Clause of the Fourteenth Amendment." *Id.* at *11; *see also Wood*, 2020 WL 6817513, at *8–10 (concluding that vote-dilution injury is not "cognizable in the equal protection framework").

Plaintiffs assert a confusing "disparate treatment" claim, s*ee* Compl. ¶¶ 168-72, predicated on provisions of the Settlement Agreement that set forth "standards to be followed by the clerks and registrars in processing absentee ballots *in the State of Georgia*" as a whole, not across different counties.  *Id.* ¶ 52 (emphasis added).

19

But the promulgation of uniform procedures with which Plaintiffs disagree is not an equal protection violation. As the Third Circuit recently concluded under similar circumstances in determining that the plaintiffs failed to state an equal protection claim because they lacked standing:

> Plaintiffs advance an Equal Protection Clause argument based solely on state officials' alleged violation of state law that does not cause unequal treatment. And if dilution of lawfully cast ballots by the "unlawful" counting of invalidly cast ballots were a true equal-protection problem, then it would transform every violation of state election law (and, actually, every violation of every law) into a potential federal equal-protection claim requiring scrutiny of the government's 'interest' in failing to do more to stop the illegal activity. *That is not how the Equal Protection Clause works.*

*Bognet*, 2020 WL 6686120, at *11 (internal citations and quotations omitted; emphasis added.) The same reasoning applies here.

Plaintiffs also briefly insinuate an equal protection claim by alleging that Defendants "denied Plaintiffs access to and/or obstructed actual observation and monitoring of the absentee and mail-in ballots being pre-canvassed and canvassed by Defendants," Compl. ¶161, but this too lacks merit. Courts have repeatedly held that "there is no individual constitutional right to serve as a poll watcher." *Boockvar*, 2020 WL 5997680, at *67 (quoting *Pa. Democratic Party v. Boockvar*, 238 A.3d 345, 385 (Pa. 2020)). Plaintiffs cite no authority to the contrary.

20

### 4.  Plaintiffs have not pleaded a due process claim.

In Count IV, Plaintiffs attempt to package their theories of purported illegal voting under Georgia law and fraud into a due process theory, once again alleging such violations of state law diluted their votes. *See* Compl. ¶ 178. But as discussed *supra*, vote dilution is a context-specific theory of constitutional harm premised on the Equal Protection Clause, not the Due Process Clause, and at any rate Plaintiffs have failed to plead a cognizable vote-dilution claim. Even lending Plaintiffs a more charitable reading—by construing the allegations in the complaint as a substantive due process claim—the Complaint would still fall short.

It is well-settled that "[f]ederal courts should not 'involve themselves in garden variety election disputes.'" *Serpentfoot v. Rome City Comm'n*, No. 4:09-CV-0187-HLM, 2010 WL 11507239, at *16 (N.D. Ga. Mar. 3, 2010) (quoting *Curry v. Baker*, 802 F.2d 1302, 1315 (11th Cir. 1986) (noting "[o]nly in extraordinary circumstances will a challenge to a state election rise to the level of a constitutional deprivation"). For the substantive Due Process Clause to be implicated, the situation "must go well beyond the ordinary dispute over the counting and marking of ballots." *Curry*, 802 F.2d at 1315.

As Judge Grimberg observed based on much of the (exact) same evidence, the allegedly illegal votes and supposedly improvident behavior, even if true, amount to

21

little more than these types of "garden variety" disputes that simply do not rise to constitutional violations. *Wood*, ECF No. 54 at 36; *see also, e.g.*, *Serpentfoot v. Rome City Comm'n*, 426 F. App'x 884, 887 (11th Cir. 2011) ("[Plaintiff's] allegations show, at most, a single instance of vote dilution and not an election process that has reached the point of patent and fundamental unfairness indicative of a due process violation.").[7]

Citizens are not constitutionally entitled to an error-free election. The sort of unconstitutional irregularity that courts have entertained under the Due Process Clause consists of widescale disenfranchisement. *See, e.g.*, *Bennett v. Yoshina*, 140 F.3d 1218, 1226-27 (9th Cir. 1998). But Plaintiffs' Complaint does not allege disenfranchisement at all. Rather, it seeks to disenfranchise millions of Georgian voters by "decertifying" the result and declaring their preferred candidate the new winner. Plaintiffs' due process claim must be dismissed.

**E.  Plaintiffs are not entitled to the relief they seek.**

The requested relief is not tailored to the allegations in the Complaint because instead of remedying a constitutional violation, Plaintiffs' requested relief *would*

---

[7] In contrast, it would violate the constitutional rights of the millions of voters who relied on many of the procedures challenged now, after the election. *See e.g.*, *Griffin v. Burns*, 570 F.2d 1065, 1079 (1st Cir. 1978) (finding disenfranchisement of electorate who voted by absentee ballot a violation of substantive due process).

*create one*. *See, e.g.*, Compl. ¶ 210; *see also Stein v. Cortés*¸ 223 F.Supp.3d 423, 442 (E.D. Pa 2016) (granting relief that "could well ensure that no Pennsylvania vote counts . . . would be both outrageous and completely unnecessary"). As another federal court stated this past week when the Trump Campaign sought similar relief in Pennsylvania, "[t]his Court has been unable to find any case in which a plaintiff has sought such a drastic remedy in the contest of an election, in terms of the sheer volume of votes asked to be invalidated." *Donald J. Trump for President, Inc. v. Boockvar*, No. 4:20-CV-02078, 2020 WL 6821992, at *1 (M.D. Pa. Nov. 21, 2020), *aff'd*, No. 20-3371 (3d Cir. Nov. 27, 2020).

"Voters, not lawyers, choose the President. Ballots, not briefs, decide elections." *Trump for President*, No. 20-3371, ECF No. 91 at 20. The same should be true in Georgia.

## V.   CONCLUSION

For the foregoing reasons, Proposed Intervenor-Defendants respectfully request that the Court dismiss Plaintiffs' complaint.

[signature block on following page]

23

Dated: November 30, 2020.       Respectfully submitted,

**<u>Adam M. Sparks</u>**
Halsey G. Knapp, Jr.
Georgia Bar No. 425320
Joyce Gist Lewis
Georgia Bar No. 296261
Susan P. Coppedge
Georgia Bar No. 187251
Adam M. Sparks
Georgia Bar No. 341578
KREVOLIN AND HORST, LLC
One Atlantic Center
1201 W. Peachtree Street, NW, Ste. 3250
Atlanta, GA 30309
Telephone: (404) 888-9700
Facsimile: (404) 888-9577
hknapp@khlawfirm.com
jlewis@khlawfirm.com
coppedge@khlawfirm.com
sparks@khlawfirm.com

Marc E. Elias*
Amanda R. Callais*
PERKINS COIE LLP
700 Thirteenth Street NW, Suite 800
Washington, DC 20005
Telephone: (202) 654-6200
melias@perkinscoie.com
acallais@perkinscoie.com

Kevin J. Hamilton*
Amanda J. Beane*
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101
Telephone: (206) 359-8000

24

khamilton@perkinscoie.com
abeane@perkinscoie.com

Matthew J. Mertens*
Georgia Bar No: 870320
PERKINS COIE LLP
1120 NW Couch Street, 10th Floor
Portland, Oregon 97209
Telephone: (503) 727-2000
mmartens@perkinscoie.com

*Counsel for Proposed Intervenor-
   Defendants*

*Pro Hac Vice Application Pending*

25

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| CORECO JA'QAN PEARSON, VIKKI TOWNSEND CONSIGLIO, GLORIA KAY GODWIN, JAMES KENNETH CARROLL, CAROLYN HALL FISHER, CATHLEEN ALSTON LATHAM, and BRIAN JAY VAN GUNDY, | CIVIL ACTION FILE NO. 1:20-cv-04809-TCB |
| Plaintiffs, | |
| v. | |
| BRIAN KEMP, in his official capacity as Governor of Georgia, BRAD RAFFENSPERGER, in his official capacity as Secretary of State and Chair of the Georgia State Election Board, DAVID J. WORLEY, in his official capacity as a member of the Georgia State Election Board, REBECCA N. SULLIVAN, in her official capacity as a member of the Georgia State Election Board, MATTHEW MASHBURN, in his official capacity as a member of the Georgia State Election Board, and ANH LE, in her official capacity as a member of the Georgia State Election Board, | |
| Defendants. | |

**CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing document has been prepared in accordance with the font type and margin requirements of L.R. 5.1, using font type of Times New Roman and a point size of 14.

Dated: November 30, 2020.                    **Adam M. Sparks**
                                             *Counsel for Proposed Intervenor-*
                                             *Defendants*