IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| CORECO JA'QAN PEARSON, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>BRIAN KEMP, in his official capacity as Governor of Georgia *et al.*,<br><br>*Defendants*. | CIVIL ACTION<br><br>FILE NO. 1:20-cv-04809-TCB |

**STATE DEFENDANTS' EMERGENCY MOTION
TO DISSOLVE, ALTER, OR AMEND TEMPORARY
RESTRAINING ORDER AND BRIEF IN SUPPORT**

Defendants Governor Brian Kemp, Secretary of State and Chair of the State Election Board Brad Raffensperger, and State Election Board Members David Worley, Rebecca Sullivan, Matthew Mashburn, and Anh Le (collectively, the "State Defendants"), hereby move[1] this Court to dissolve the November 29, 2020 Temporary Restraining Order entered by the Court, [Doc.

---

[1] For the same reasons the Order is due to be dissolved, altered, or amended, good cause exists to waive the time requirements of Local Rule 7.1 and treat this motion as an emergency motion pursuant to Local Rule 7.2. Specifically, without dissolution, alteration, or amendment, the ability of local county officials to efficiently and securely conduct the upcoming January 5, 2021 Run-Off Elections will be significantly inhibited.

1

14], or, in the alternative, to alter or amend that Order, showing the Court as follows:

As this Court is aware, Georgians are set to choose their next United States Senators and a Public Service Commissioner on January 5, 2020. Early voting in the election commences in just over two weeks, on December 14, 2020. In-person early voting takes place on Georgia's ballot marking devices ("BMDs"), which are subject to Paragraph Two of the Court's November 29, 2020 Order granting emergency temporary injunctive relief (the "Order" or "TRO"). Specifically, Paragraph Two provides that the State Defendants (collectively, the "State") are "ENJOINED and RESTRAINED from altering, destroying, or erasing, or allowing the alteration, destruction, or erasure of, any software or data on any Dominion voting machine in Cobb, Gwinnett, and Cherokee Counties."

With this Motion, the State seeks to amend Paragraph Two so that counties may proceed with Logic and Accuracy testing needed to prepare the machines for early, in-person and election-day voting as required by State law.[2] Without some modification, non-party Cobb County's ability to prepare

---

[2] Under *Jacobson v. Florida Secretary of State*, 974 F.3d 1236, 1253 (11th Cir. 2020), the State does not maintain the BMD's at issue.  Nevertheless, in the light of the Order, and because the State is subject to the Order, it seeks the relief articulated in this Motion.

for the January 5, 2021 Run-off Election will be significantly hindered if not practically precluded altogether, while voters in Gwinnett County could be deprived of the same rights to early voting as voters in other Georgia counties. Cobb and Gwinnett voters may also be subject to long lines due to an insufficient number of voting machines. There is no reason for these outcomes and, consequently, the State respectfully requests that this Court dissolve the TRO or otherwise modify Paragraph Two of the Order to permit Cobb and Gwinnett County machines to be used in the rapidly approaching Run-off Election.

## ARGUMENT AND CITATION TO AUTHORITY

There are good grounds to grant the State's Motion.  First, the standard to grant the State's requested relief is broad, and this Court retains jurisdiction to do so. Second, evidence attached to this Motion demonstrates the need to use the Cobb and Gwinnett BMDs, which does not interfere with any evidence the Plaintiffs may seek at some later time. Third, as this Court has already recognized, Plaintiffs themselves have caused the delay in this litigation. *See* [37, pp. 2–3]. They cannot now complain that immediate relief remains warranted.

## I.     Applicable Legal Standard

Federal Rule of Civil Procedure 65(b)(4) authorizes the Court to dissolve the Order quickly—in two days or less. Case law empowers this Court with broad authority to do so. *Collum v. Edwards*, 578 F.2d 110, 113 (5th Cir. 1978) (addressing preliminary injunction). *See also Mincey v. Head*, 206 F.3d 1106 (11th Cir. 2000) (quoting *American Home Assurance Co. v. Glenn Estess & Assocs.*, 763 F.2d 1237, 1238–39 (11th Cir. 1985) (addressing Rule 59(e) and amendment of judgments)). Similarly, Federal Rule of Civil Procedure 62(d) permits this Court to "suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights," while an appeal is pending.

Some Courts treat a motion seeking to dissolve or modify an injunction while an appeal is pending as a motion for reconsideration (which in turn falls within Fed. R. Civ. P. 59(e)), justified whenever any one of the following three instances is demonstrated: "(1) there has been an intervening change in the law, (2) new evidence has been discovered that was not previously available to the parties at the time the original order was entered, **or** (3) reconsideration is necessary to correct a clear error of law or prevent manifest injustice." *Securities & Exchange Comm'n v. Conversion Solutions Holding Corp.*, No. 1:06-cv-2568-CC, 2008 WL 11407217 (N.D. Ga. Jul. 21,

4

2008) (citing *Bryan v. Murphy*, 246 F. Supp. 2d 1256, 1258–59 (N.D. Ga. 2003) (emphasis added) (applying Fed. R. Civ. P. 59)). Other courts have taken a broader approach, applying "general equitable principles." *Huk-A-Poo Sportswear, Inc. v. Little Lisa, Ltd.*, 74 F.R.D. 621, 623 (S.D.N.Y. 1977).

Plaintiffs' Notice of Appeal suggests this Court is now divested of jurisdiction. [Doc. 32]. Plaintiffs are wrong. This Court "retain[s] jurisdiction over motions for alteration or amendment" of its Order, even after a notice of appeal is given. Wright & Miller, 11 Fed. Prac. & Proc. Civ. § 2810.1 (3d ed. Oct. 2020 Update). At the very least, courts in the Eleventh Circuit consider motions for reconsideration to be encompassed within the provisions of Federal Rule of Civil Procedure 59(e). *See Green v. Drug Enforcement Admin.*, 606 F.3d 1296 (2010); *see also Dixit v. Singh*, No. 1:18-cv-403-TWT (N.D. Ga. Apr. 23, 2018).

## II. The Order should be dissolved or amended since information is already retained and it imposes undue hardship on non-parties.

### A. Election data is retained under existing processes.

Plaintiffs contend that an immediate temporary restraining order is necessary because they fear the voting machines will be "wiped" before the upcoming elections and forensic data will be lost. [Doc. 6]. Plaintiffs again are wrong. A basic understanding of the State's elections system instead shows

that data from the election is stored in three different ways following completion of the election, even in the absence of the Court's Temporary Restraining Order.

Before each election, Ballot Marking Devices ("BMDs") utilize USB drives to load certain election data files onto the BMDs. *See* Declaration of Michael Barnes, ¶ 3, attached hereto as **Exhibit 1**. Those election data files contain blank ballot images for each precinct associated to the BMD for the previous election, the ballot activation codes needed to access each associated ballot, and the audio files associated to the content within the ballot images for visually impaired voters. *Id.* Before a new election occurs, the election data files from the most-recent election must be removed from the BMDs, as the BMDs host only one set of those files at a time. *Id.* at ¶ 4. The removal of election data files does not alter the operational software or source code of the BMDs. *Id.*

Separate from the BMDs, scanners are employed to count the paper ballots produced by the BMD and attached printer; those scanners utilize Compact Flash Cards. These Compact Flash Cards contain election files downloaded from the county's election management server before each election—like the files used in the BMD, the files employed with the scanners correspond to the particular election. *Id.* at ¶ 5. There are only a limited

6

number of these cards, so they must be formatted and re-used for each election. *Id.* at ¶ 6. The formatting removes all data previously held by the Compact Flash Cards. However, before the formatting occurs, the results contained in the memory cards are uploaded to the specific county's election management server, and retained. *Id.* Thus, the data is securely stored after each election and before the removal of the data from the Compact Flash Cards.

Finally, the paper ballots on which votes were cast are also retained. In Georgia's BMD System, a voter makes their selection on the BMD which is connected to a printer that produces a paper ballot. That ballot is then taken to a precinct scanner which records the votes contained on the paper ballot and deposits the ballot into a secure box. With respect to absentee-by-mail and provisional ballots, those ballots are similarly counted by a scanner and, like the in-person ballots, are retained.

All of this data is required by Georgia law to be retained, even in the absence of the TRO. Indeed, Code Section 21-2-500 requires the following information to be stored with the Clerk of Superior Court or other County Officer designated by the County governing authority:

> the used and void ballots and the stubs of all ballots used; one copy of the oaths of poll officers; and one copy of each numbered list of voters, tally paper, voting machine paper proof sheet, and

7

>return sheet involved in the primary or election. In addition, the superintendent shall deliver copies of the voting machine ballot labels, computer chips containing ballot tabulation programs, copies of computer records of ballot design, and similar items or an electronic record of the program by which votes are to be recorded or tabulated, which is captured prior to the election, and which is stored on some alternative medium such as a CD-ROM or floppy disk simultaneously with the programming of the PROM or other memory storage device. The clerk, county records manager, or the office or officer designated by the clerk shall hold such ballots and other documents under seal, unless otherwise directed by the superior court, for at least 24 months, after which time they shall be presented to the grand jury for inspection at its next meeting.

O.C.G.A. § 21-2-500(a). Thus, to the extent Plaintiffs can later demonstrate a need for any of this information, it remains available for inspection even in the absence of the Temporary Restraining Order.

B. <u>Enforcement of the Order will impose undue hardship on non-party counties and their voters.</u>

Continued enforcement of Paragraph Two's embargo of the BMDs would cause substantial harm to Georgia voters in Cobb and Gwinnett counties, and in turn, the State election system and Georgia voters generally. Specifically, continued segregation of the counties' voting machines pursuant to the TRO would significantly and materially interfere with preparation for the upcoming runoff election.

8

Early voting is set to begin on December 14 for the January 5, 2021 State and Federal General Election Runoff for two seats in the United States Senate and one seat on Georgia's Public Service Commission. *See* O.C.G.A. § 21-2-385(d)(1) (establishing a period for advance voting). These elections will not happen with the flick of a switch, instead requiring significant advance preparations that must begin prior to dissolution date of the TRO. These activities include conducting essential Logic and Accuracy testing on the machines, a requirement of State law, which must be conducted on the BMDs prior to their use for both early and election day voting. *See* O.C.G.A. § 21-2-379.25(c), Ga. Comp. R & Regs. r. 183-1-12-.08. The Logic and Accuracy testing, in turn, requires removal of the files from the previous election and utilization of files for the current election, as described in Section II.A., *supra*. Ex. 1 at ¶ 7.

Under state law, the BMDs must be utilized for both early in-person and election day voting. O.C.G.A. § 21-2-300. In Gwinnett County, the BMDs are utilized for the County's 156 voting precincts and nine advance-voting locations. *See* Declaration of Kristi Royston, ¶ 3, attached hereto as **Exhibit 2**. Prior to entry of the TRO, Gwinnett County intended to begin testing of BMD's which will be utilized for early in-person voting this week. *Id.* at ¶ 9. Gwinnett County has not yet begun that testing due to the TRO. *Id.* Unless

Gwinnett County is able to begin testing this week, "it will not be possible to timely execute all of the tasks necessary to facilitate the opening of [early in-person voting] in the County for what is anticipated to be a high turnout runoff election." *Id.* at ¶ 10. While Cobb County, on the other hand, possesses sufficient BMDs not subject to the TRO for early in-person voting, it intends to use BMDs that are subject to the TRO on election day. *See* Declaration of Janine Eveler, ¶¶ 4–5, attached hereto as **Exhibit 3**. However, Cobb County must begin Logic and Accuracy by December 8, 2020 to ensure the machines are ready for deployment on election day. *Id.* at ¶ 6. Put simply, Cobb and Gwinnett counties will be unable to be prepared for voting under the extant TRO.

Thus, for at least Cobb and Gwinnett counties, the continued threat of enforcement of the TRO (to which they are not a party) would rule out, or at least make extremely difficult, any chance of readiness for early voting on December 14 and election-day voting. This would unfairly impede Cobb and Gwinnett election officials, and may well impose significant burden on those counties' voters from being able to participate in early voting, and could ultimately lead to longer lines during the later days of early voting or election day itself.

Furthermore, as a result of the disruption to elections activities in Cobb and Gwinnett counties, the State would also suffer significant harm. The State has a strong interest in running an efficient election. *New Ga. Project v. Raffensperger*, 976 F.3d 1278, 1282 (11th Cir. 2020). Interruption of two counties' preparation processes and the resulting impact on early voting, and on Election Day itself, frustrates this interest. The associated voter confusion at the unanticipated elimination of the early-voting option, as well as other realistic impacts on election day voting, is further disruptive. The harm to the counties, Georgia voters, and the State election process itself cannot be overstated. At this point, and particularly in the light of the delay caused by the Plaintiffs' litigation strategy, Paragraph Two of the Order requiring segregation of the BMDs is simply not compatible with the Sate's interest in running a smooth election. Due to the significant harms imposed on the counties and on Georgia's election system, the Order should be dissolved, or at least amended.

The State has satisfied either Rule 59's three factor test or Rule 65(b)(4)'s more flexible "general equitable principles" standard.  *See Little Lisa, Ltd.*, 74 F.R.D. at 623. Here, both the second and third circumstances—new evidence or preventing manifest injustice—are applicable. *See Conversion Solutions Holding Corp.*, 2008 WL 11407217 at * 1.  As explained,

11

evidence which was not previously available at the time this Court's Order was entered demonstrates that counties may be unable to complete pre-election Logic and Accuracy Testing required by State law while complying with the Order. As to the third circumstance, this new evidence further shows that this Court's Order may well impose manifest injustice upon Georgia voters in the affected counties, hindering their ability to vote with ease while the State's other 156 counties are not subject to the Order (to the extent the three counties named therein are subject to it at all).

### III. The Order should be dissolved since Plaintiffs have failed to add non-party county officials, rendering the relief ordered improper.

During the TRO hearing on Sunday, November 29, the Plaintiffs represented to the Court that they seek to bring in the relevant counties, as they are the ones in the control of the BMDs. Indeed, multiple counsel for the Plaintiffs indicated that counties could and later would be brought in "tonight," meaning over three days ago. [Doc. 23] (TRO Hr'g) Tr. 27:13-14; 36:23-25. Plaintiffs' counsel went even further and promised that if "the Court gives us until Tuesday to examine, we will add the counties that the Court lets us go examine, we will do it add them tomorrow; add them tonight." (*Id.* at 24:11-14).

Since Sunday, Plaintiffs have hosted rallies, filed an appeal in the Eleventh Circuit, and engaged in an aggressive social media campaign falsely accusing elected State Officials of fraud and crime. They have not, however, lived up to their representation to this Court to add the necessary parties. As the Court may recall, it was initially going to deny the TRO, and it may have granted limited relief under the belief that the Plaintiffs meant what they said and said what they meant when they represented they would bring in the proper parties to this litigation.

As the case now sits before this Court, binding precedent forecloses any of the relief Plaintiffs sought with the TRO (beyond preserving information held by the State). *See Jacobson v. Florida Sec'y of State*, 974 F.3d 1236, 1253 (11th Cir. 2020). Plaintiffs attempt to evade *Jacobson's* binding precedent by claiming it is only about Florida law. TRO Hr'g Tr. 22:13. Plaintiffs' argument reads *Jacobson* far too narrowly, as Judge William Pryor considered language from a Florida statute that is substantively the same as Georgia's (both identify the Secretary as the "Chief Election Officer"). *Id.* This language, the same Plaintiffs cite, proved insufficient to establish traceability of every election issue to the Secretary. *Id.* Applying Georgia law, United States District Court Judge Michael L. Brown came to the same conclusion earlier this year in *Anderson v. Raffensperger*, 1:20-CV-03263, 2020 WL

13

6048048, at *23 (N.D. Ga. Oct. 13, 2020). This lack of State authority and control provides another reason to amend the Order and allow the BMDs to be prepared for use in Cobb and Gwinnett Counties.

In sum, the State has demonstrated that "general equitable principles" warrant modifying the Order. *Little Lisa, Ltd.*, 74 F.R.D. at 623. On the one hand, a continued embargo of the BMDs will prevent voters in Gwinnett from having access to the machines during early voting and will inhibit Cobb from preparing its machines for election day. This will likely cause longer lines, voter confusion, and longer tabulation times. On the other hand, allowing the BMDs to be used does not harm Plaintiffs in the slightest. The State is maintaining all paper ballots, and electronic information is saved on the State's Election Database.  Time is of the essence, and the Court's relief is needed now.

## CONCLUSION

For the foregoing reasons, State Defendants respectfully request this Court dissolve or modify the TRO to prevent unintended impacts on Georgia's Run-off Election.

Respectfully submitted this 3rd day of December 2020.

        Christopher M. Carr
        Attorney General
        GA Bar No. 112505
        Russell D. Willard
        Senior Assistant Attorney General
        GA Bar No. 760280
        rwillard@law.ga.gov
        Charlene S. McGowan
        GA Bar No. 697316
        cmcgowan@law.ga.gov
        **State Law Department**
        40 Capitol Square, S.W.
        Atlanta, Georgia 30334


        */s/ Carey Miller*
        Carey Miller
        Georgia Bar No. 976240
        cmiller@robbinsfirm.com
        Josh Belinfante
        Georgia Bar No. 047399
        jbelinfante@robbinsfirm.com
        Melanie Johnson
        Georgia Bar No. 466756
        mjohnson@robbinsfirm.com
        **Robbins Ross Alloy Belinfante Littlefield LLC**
        500 14th Street NW
        Atlanta, GA 30318
        Telephone:  (678) 701-9381
        Facsimile:   (404) 856-3250

*Counsel for State Defendants*

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1(D), I hereby certify that the foregoing STATE DEFENDANTS' EMERGENCY MOTION TO DISSOLVE, ALTER, OR AMEND TEMPORARY RESTRAINING ORDER AND BRIEF IN SUPPORT was prepared double-spaced in 13-point Century Schoolbook font, approved by the Court in Local Rule 5.1(C).

*/s/Carey Miller*
Carey Miller