**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

CORECO JA'QAN PEARSON, *et al.*,

    *Plaintiffs,*

v.

BRIAN KEMP, in his official
capacity as Governor of Georgia,

    *Defendants.*

CIVIL ACTION FILE
NO. 1:20-cv-04809-TCB

**CONSOLIDATED MOTION TO INTERVENE BY GWINNETT BORE
WITH BRIEF IN SUPPORT**

Stephen Day, John Mangano, Alice O'Lenick, Ben Satterfield, and

Wandy Taylor, members of the Gwinnett County Board of Registrations and

Elections ("Gwinnett BORE" or "Proposed Intervenors") file this motion to

intervene as objectors. Intervention is appropriate under Federal Rules of

Civil Procedure 24(a) and (b) for the following reasons.

**FACTUAL BACKGROUND**

On November 20, 2020, Governor Brian Kemp and Secretary of State

Brad Raffensperger certified the election results. This certification followed

an audit by hand recount in Georgia which affirmed the results.

- 1 -

Plaintiffs asked this Court to enter an order decertifying the results and "requiring Governor Kemp to transmit certified election results that state that President Donald J. Trump is the winner of the election." Compl. ¶ 211(3). Plaintiffs' Complaint was filed more than three weeks after the general election, and five days after Georgia certified the results.

The Temporary Restraining Order ("TRO") issued by this Court on November 29, 2020 [Doc. 14] is materially delaying the ability for the Gwinnett BORE to ready its equipment and polling locations for the upcoming January 5, 2020 runoff election and the early voting process for that election, which begins on December 14, 2020. A hearing on the TRO was scheduled to take place today, December 4, 2020, but this Court cancelled the hearing on December 2, 2020 [Doc. 40] and has not provided any further indication as to when the TRO will be resolved.

Each day the TRO remains in effect, it is increasingly difficult for the Gwinnett BORE to ensure it is adequately prepared for the upcoming runoff election, as outlined in the Declaration of Kristi Royston, filed yesterday. [Doc. 52-2]. Specifically, if the Gwinnett BORE is unable to begin Logic and Accuracy testing on its voting machines and other equipment immediately, it will be unable to open all of its early-voting sites on December 14, as it had planned to do. *Id*. at ¶ 14.

The Gwinnett BORE files this motion to object to the TRO because its interests will be materially and irreparably harmed if the TRO is not lifted. The Gwinnett BORE has a significant stake in the outcome of this action and, as one of Georgia's largest counties, can offer the Court useful insight on the practical needs associated with applying the TRO to those who have a duty to carry out the administration of elections.

## ARGUMENT AND CITATION TO AUTHORITY

### I.     The Gwinnett BORE is entitled to intervention as of right.

Intervention as of right must be granted when (1) the motion to intervene is timely; (2) the proposed intervenors possess an interest in the subject matter of the action; (3) denial of the motion to intervene would affect or impair the proposed intervenors' ability to protect their interests; and (4) the proposed intervenors' interests are not adequately represented by the existing parties to the lawsuit. Fed. R. Civ. P. 24(a)(2); *Georgia v. U.S. Army Corps of Eng'rs*, 302 F.3d 1242, 1250 (11th Cir. 2002). The Gwinnett BORE satisfies each of these factors.

### A.     *The Gwinnett BORE timely filed this Motion*

The Gwinnett BORE filed this Motion just two days after this Court signaled it would not resolve the status of the TRO as it had initially scheduled. Because the Court has not provided a timeline of any kind now

that the hearing on the TRO has been delayed – or possibly outright

cancelled – the Gwinnett BORE is in the unique position of being prevented

by Court Order to prepare for an election that is mere days away.

B.      *The Gwinnett BORE has an interest in the outcome of this action
        and denying its motion impair its ability to protect such interests.*

The Gwinnett BORE cannot overstate the effect the TRO has on its

ability to adequately prepare for the upcoming runoff election. It is likely

that, in keeping with the general election one month ago, the runoff election

will have uncommonly high voter turnout, especially during early voting.

[Doc. 52-2 at ¶ 11]. As a result, successful administration of the election in

Gwinnett County will require all of the voting machines and polling places to

function at optimum capacity. [Doc. 52-2 at ¶¶ 9-12]. This capacity is

hindered by the delay brought on by this Court's TRO. [Doc. 52-2 at ¶ 13].

Indeed, if the Gwinnett BORE cannot begin programming machines today or

tomorrow, the county will only be able to have one early-voting site open on

December 14 instead of all nine locations that would be available absent the

TRO. [Doc. 52-2 at ¶¶ 16-18]. The massive diminution of resources and access

to voting sites in one of Georgia's counties could be a disaster for Gwinnett

County voters and potentially result in wholesale disenfranchisement of

hundreds of thousands of Georgians. Put simply, the Gwinnett BORE has an

acute interest in the outcome of this action, and denial of the motion to

intervene would absolutely affect or impair the proposed intervenors' ability

to protect their interests.

>  C.   *The Gwinnett BORE is not adequately represented by the parties to this action*

While the Governor, Secretary of State, and the various election

officials named in this action have obvious interests in defending the state's

laws and their exercises of authority pursuant to those laws, the Gwinnett

BORE's focus is entirely separate from those interests, but just as important.

Moreover, a proposed intervenor's burden "should be treated as minimal,"

and it is sufficient "if the applicant shows that representation of his interest

'may be' inadequate." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528,

538 n. 10 (1972) (citing 3 B J. Moore, Federal Practice 24.09—1 (4) (1969));

*Chiles v. Thornburgh*, 865 F.2d 1197, 1214 (11th Cir. 1989).

Here, while Defendants have an interest in defending the actions of

state officials, they must parry the litany of accusations cast against them by

Plaintiffs. The Gwinnett BORE, on the other hand, is singularly focused on

expeditious resolution of the TRO that resulted from Plaintiffs' accusations.

Moreover, the Gwinnett BORE faces practical hurdles in administering the

upcoming election unique to their circumstances. While there is certainly an

overlap of interests at times, no Defendant *shares* the interests of the

Gwinnett BORE. And because of this, they cannot rely on Defendants or

anyone else to provide adequate representation. They have thus satisfied the

four requirements for intervention as of right under Rule 24(a)(2).

## II.     The Gwinnett BORE should receive permissive intervention from this Court.

If the Court does not grant intervention as a matter of right, the

Gwinnett BORE respectfully requests that the Court exercise its discretion to

allow them to intervene under Rule 24(b). The Court has broad discretion to

grant a motion for permissive intervention when it determines that: (1) the

proposed intervenors' claim or defense and the main action have a question of

law or fact in common, and (2) the intervention will not unduly delay or

prejudice the adjudication of the original parties' rights. *See* Fed. R. Civ. P.

24(b)(1)(B) and (b)(3); *Chiles*, 865 F.2d at 1213; *Ga. Aquarium, Inc. v.

Pritzker*, 309 F.R.D. 680, 690 (N.D. Ga. 2014). Even where courts find

intervention as of right may be denied, permissive intervention may

nonetheless be proper or warranted. Moreover, "the claim or defense clause of

Rule 24(b)(2) is generally given a liberal construction." *Id.* The Gwinnett

BORE meets these requirements.

Initially, the Gwinnett BORE's claims and defenses will inevitably raise common questions of law and fact because they seek to ensure voters in *all elections* have their vote counted. See *Franconia Minerals (US) LLC v. United States*, 319 F.R.D. 261, 268 (D. Minn. 2017) ("Thus, applicant['s] claims and the main action obviously share many common questions of law and perhaps of fact."). At bottom, Defendants are hoping to ensure that voters in the *last* election have their votes counted. The Gwinnett BORE, on the other hand, is focused on ensuring voters in the *next* election aren't unnecessarily disenfranchised. And the TRO, as it stands, imperils the legitimacy of both elections.

Finally, for the reasons set forth above, the motion to intervene is timely, and given the early stage of this litigation, intervention will not unduly delay or prejudice the adjudication of the rights of the original parties.

### III.   The Gwinnett BORE joins the State's motion.

For purposes of its claims or defenses for which intervention is sought, Fed. R. Civ. P. 24(c), the Gwinnett BORE joins the State Defendants' Emergency Motion to Dissolve, Alter, or Amend Temporary Restraining Order [Doc. 52] and urges the Court to dissolve the TRO as quickly as

practicable to allow programming of voting machines for early voting to

begin.

     Respectfully submitted this 4th day of December, 2020.

> */s/ Bryan P. Tyson*
> Bryan P. Tyson
> Georgia Bar No. 515411
> btyson@taylorenglish.com
> Frank B. Strickland
> Georgia Bar No. 687600
> fstrickland@taylorenglish.com
> Bryan F. Jacoutot
> Georgia Bar No. 668272
> bjacoutot@taylorenglish.com
> TAYLOR ENGLISH DUMA LLP
> 1600 Parkwood Circle, Suite 200
> Atlanta, GA 30339
> 770.434.6868 (telephone)
>
> *Counsel for the Gwinnett BORE*

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to L.R. 7.1(D), the undersigned hereby certifies that the

foregoing CONSOLIDATED MOTION TO INTERVENE BY GWINNETT

BORE WITH BRIEF IN SUPPORT  has been prepared in Century

Schoolbook 13-point, a font and type selection approved by the Court in L.R.

5.1(B).

> */s/ Bryan P. Tyson*
> Bryan P. Tyson