# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

|  |  |
|---|---|
| CORECO JA'QAN PEARSON, VIKKI TOWNSEND CONSIGLIO, GLORIA KAY GODWIN, JAMES KENNETH CARROLL, CAROLYN HALL FISHER, CATHLEEN ALSTON LATHAM, and BRIAN JAY VAN GUNDY, | CIVIL ACTION FILE NO. 1:20-cv-04809-TCB |
|        Plaintiffs, |  |
| v. |  |
| BRIAN KEMP, in his official capacity as Governor of Georgia, BRAD RAFFENSPERGER, in his official capacity as Secretary of State and Chair of the Georgia State Election Board, DAVID J. WORLEY, in his official capacity as a member of the Georgia State Election Board, REBECCA N. SULLIVAN, in her official capacity as a member of the Georgia State Election Board, MATTHEW MASHBURN, in his official capacity as a member of the Georgia State Election Board, and ANH LE, in her official capacity as a member of the Georgia State Election Board, |  |
|        Defendants. |  |

# INTERVENOR-DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' EMERGENCY MOTION FOR INJUNCTIVE RELIEF

## I.     INTRODUCTION

In their emergency motion for injunctive relief ("Motion"), Plaintiffs ask this Court to enjoin certification of an election decided by the ballots of millions of lawful voters, discard their clear decision selecting President-Elect Joseph R. Biden, Jr. as the winner of the presidential race in Georgia, and declare that the state's electoral college votes will be awarded to President Donald J. Trump instead. Granting this relief would transform the political process as Georgians and Americans have long understood it, into something antithetical to our nation's most cherished democratic principles. It would also require this Court to step outside the constitutionally prescribed role of federal courts. Plaintiffs' Motion is as factually baseless as it is unprecedented. Plaintiffs purport to find fault in an eight-month-old settlement agreement, which they mischaracterize and misunderstand, and they rely on unfounded conspiracy theories of election fraud, and specious affidavits about absentee voting and the recount process.

Numerous jurisdictional barriers also doom Plaintiffs' case from the outset. As already set forth in the motion to dismiss filed by Intervenor-Defendants Democratic Party of Georgia, DSCC, and DCCC ("Intervenors"), ECF No. 20-2, Plaintiffs lack standing to bring these claims; their decision to wait eight months and challenge the settlement agreement after the election legally bars this lawsuit; and

they have entirely failed to meet Rule 8's plausibility requirements, to say nothing of Rule 9(b)'s heightened pleading standard for claims sounding in fraud. The Court could deny Plaintiffs' Motion for these reasons alone. The Motion's lack of legal authority and relevant supporting evidence provide ample additional reason for denial.

By all credible accounts, Georgia's 2020 election was one of the most transparent and accurate in history. Elections officials worked hard under difficult conditions to administer the nation's first-ever presidential election to be held in the middle of a pandemic, and then to accurately count millions of ballots cast by lawful voters. Claims of fraud or misconduct have been debunked. U.S. Attorney General William P. Barr has stated that the Justice Department has not uncovered voting fraud that could have affected the results of the presidential election.

Nevertheless, a small number of zealous partisans have launched a misinformation campaign to sow doubt about the results of the election. Part of this effort has been an unprecedented wave of litigation attempting to deliver the presidential election to President Trump, in direct contradiction to the will of the people. Each of these lawsuits have failed. This one should, as well.[1]

---

[1] *See, e.g.*, *Donald J. Trump for President, Inc. v. Boockvar*, No. 4:20-CV-02078, 2020 WL 6821992 (M.D. Pa. Nov. 21, 2020), *aff'd*, No. 20-3371, 2020 WL 7012522

## II.   BACKGROUND

### A.   The General Election

Nearly five million Georgians cast ballots in the November election. On November 11, Secretary of State Brad Raffensperger (the "Secretary") announced that an audit by statewide hand recount of the presidential election would take place. This audit confirmed the outcome of the presidential election in favor of President-elect Biden, and on November 20, the Secretary certified that President-elect Biden had prevailed over President Trump by a margin of 12,670 votes. Compl. ¶ 23.[2]

### B.   Prior and Ongoing Litigation

Less than three weeks ago, Lin Wood (who represents Plaintiffs in this lawsuit) filed his *own* lawsuit, *Wood v. Raffensperger*, Case No. 1:20-cv-04651-SDG, ECF No. 5. The *Wood* litigation asserted claims that bear a striking

_____

(3d Cir. Nov. 27, 2020) (affirming district court's refusal to enjoin Pennsylvania from certifying election results based on similar equal protection claims); *Bognet v. Sec'y of Commonwealth*, No. 20-3214, 2020 WL 6686120 (3d Cir. Nov. 13, 2020) (affirming denial of preliminary relief based on equal protection claim premised on vote dilution by purportedly illegal ballots); *Wood v. Raffensperger*, No. 1:20-cv-04561-SDG, 2020 WL 6817513 (N.D. Ga. Nov. 20, 2020) (rejecting plaintiffs' motion to enjoin Georgia from certifying election results based on similar equal protection claims); *aff'd*, No. 20-14418, slip op. (11th Cir. Dec. 5, 2020).

[2] On November 22, President Trump requested a third count by machine. President-elect Biden prevailed over President Trump by 11,769 votes in this third count. *See* Office of the Georgia Secretary of State, *Presidential Recount (Nov. 3, 2020)*, https://results.enr.clarityelections.com/GA/107231/web.264614/#/detail/5000   (last accessed December 4, 2020).

resemblance to those Plaintiffs press here. *See infra* at 9-25. And each of Wood's claims were thoughtfully and thoroughly rejected by Judge Grimberg in an order denying the motion for a temporary restraining order. *Wood v. Raffensperger.,* No. 1:20-CV-04651-SDG, 2020 WL 6817513 (N.D. Ga. Nov. 20, 2020), *aff'd*, Case No. 20-14418 slip op. (11th Cir. Dec. 5, 2020).

In that case, Wood contended that the Secretary and the State Election Board had performed their roles in an unconstitutional manner by entering into a settlement agreement with Intervenors in a separate federal litigation over eight months ago (the "Settlement Agreement"). *Id.* at *2-3. He also contended the Secretary and the State Election Board had violated the due process rights of Republican election monitors during the hand recount. *Id.* *6.

In denying the motion for a temporary restraining order, Judge Grimberg found that Wood could not clear the threshold requirements to invoke the federal court's jurisdiction, much less succeed on his claims. First, he found that Wood lacked standing to assert these claims. *Id.* at *4-6. Second, he found that Wood's claims were barred by the doctrine of laches. *Id.* at *7-8. Finally, Judge Grimberg determined that Wood had failed to carry his burden on even one of the four requisite factors necessary to justify the temporary restraining order he sought. *Id.* at *8-13.

In so finding, Judge Grimberg concluded that the Settlement Agreement that Wood (and Plaintiffs here) purported to challenge did not alter Georgia law or impose any kind of constitutional injury on Wood or Georgia voters. Instead, it simply articulated uniform, statewide procedures for matching signatures on absentee ballot envelopes and curing deficiencies on the same, in a manner and means that was entirely consistent with Georgia law. *Id.* at \*10; *see also id.* at \*3 (setting forth substantive terms of agreement between Intervenors and Defendants). The rule implemented as a result of the Settlement Agreement, moreover, was the subject of an extended and public notice and comment process.[3]

Wood appealed, and on December 5, the Eleventh Circuit affirmed, finding that Wood lacked standing to bring his claims because he only asserted a generalized grievance and that his action is moot because he primarily sought to delay certification of an election that has already been certified. *Wood v. Raffensperger*, No. 20-14418 slip op. (11th Cir. Dec. 5, 2020).

## C.    Plaintiffs' Lawsuit

In an attempt to sidestep Wood's first failed bite at the apple, Plaintiffs filed this Complaint on November 25—over three weeks after the general election and

---

[3] *See also* Ga. Comp. R. & Regs. 183-1-14-.13 (amended March 22, 2020); Ga. Comp. R. & Regs. 183-1-14-.13 (May 21, 2020); Ga. Comp. R. & Regs. 183-1-14-.13 (Aug. 31, 2020).

5

five days after Georgia officials certified the election results. The gist of Plaintiffs' disjointed 100-page Complaint is that Georgia election officials are engaged in an elaborate conspiracy to "fraudulently manipulat[e] the vote count to make certain the election of Joe Biden as President of the United States." Compl. ¶ 2.

The Complaint borrows heavily from the "factual" allegations that Judge Grimberg found inadequate in *Wood*, re-filing eleven affidavits from that case. It complains, again, about the constitutionality of the Settlement Agreement (*see, e.g.*, *id.* ¶ 136) and about lack of adequate access during the hand recount of the presidential election results (*see, e.g., id.* ¶ 157). Plaintiffs additionally "support" the Complaint with "expert" declarations written for other lawsuits, concerning entirely different issues, in different states. *See id*. ¶¶ 8, 10, 147-148*; see also id.* at 2 n.1.

From these incredible factual allegations, Plaintiffs allege various causes of action: ostensible violations of the Elections and Electors Clauses, Compl. ¶¶ 132-142, Equal Protection Clause, *id.* ¶¶ 143-167, Due Process Clause, *id.* ¶¶ 168-181, and "wide-spread ballot fraud", which appears to assert a claim under Georgia's election contest statute (which can only be brought in state court), *id.* ¶¶ 182-207.

Among many other requests, Plaintiffs ask this Court to order Defendants to "decertify" the election for President-elect Biden and to affirmatively certify results "in favor of President Donald Trump." *Id*. ¶¶ 208-211.

## III.   ARGUMENT

### A.   Legal Standard

A party seeking a preliminary injunction must establish "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest." *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005) (per curiam). "[A] preliminary injunction is an extraordinary and drastic remedy that should not be granted unless the movant clearly carries its burden of persuasion on each of these prerequisites." *Suntrust Bank v. Houghton Mifflin Co.*, 252 F.3d 1165, 1166 (11th Cir. 2001) (per curiam); *see also Wood*, 2020 WL 6817513, at *13 (Grimberg J.) (denying temporary restraining order on similar facts).

### B.   Plaintiffs' motion is procedurally improper.

As an initial matter, rather than actually attempt to make their case by proffering arguments and evidence and explaining how that evidence supports their position in the body of their brief, Plaintiffs have improperly "present[ed] only a summary of certain highlighted facts for the convenience of the [C]ourt," purporting, instead, to wholesale incorporate by reference their entire 100-page Complaint and

29 exhibits, *see* Mot. for TRO (ECF No. 6) at 5, leaving both the other parties in the case and the Court to sift through all of it and attempt to guess at what Plaintiffs believe actually supports their case.[4] *See, e.g.*, *Four Seasons Hotels & Resorts, B.V. v. Consorcio Barr S.A.*, 377 F.3d 1164, 1167 n.4 (11th Cir. 2004) (holding a party who purported on appeal to "incorporate[ ] the [additional] arguments it presented below" inappropriately sought to "transfer *its* duty to make arguments to the judges of this panel") (emphasis added)*; Bumpers for Estate of Bumpers v. Austal U.S.A., L.L.C,* No. CV 08-00155-KD-N, 2015 WL 13664949, at *2 (S.D. Ala. June 1, 2015) ("It is neither this Court's job, nor its preference, to utilize its resources to scour the trial record (transcripts, docket, etc.) to 'ferret out' counsel's arguments for them, and then endeavor to presume which are being reasserted and which are not."). Moreover, Plaintiffs cannot support their Motion with allegations from their Complaint. *See Wright v. Farouk Sys., Inc.*, 701 F.3d 907, 911 n.8 (11th Cir. 2012) ("[P]leadings are only allegations, and allegations are not evidence of the truth of what is alleged.").

---

[4] Page number citations herein are to the ECF page number, rather than to the document's internal pagination.

8

Because Intervenors cannot divine what arguments Plaintiffs intended to present by referencing the entire Complaint and its exhibits, this brief focuses on the arguments and evidence specifically presented and identified in Plaintiffs' Motion.

## C.   Plaintiffs lack standing.

As a threshold matter, this Court should deny Plaintiffs' request for injunctive relief because Plaintiffs lack standing to even pursue this litigation, much less to obtain the emergency and extraordinary relief that they request.

Plaintiffs have neither pleaded nor suffered a cognizable injury-in-fact, asserting only generalized grievances about Defendants' supposed defiance of state law and entirely unsupported (and thus not plausible) theories of transnational election fraud. As the Eleventh Circuit held today when affirming dismissal of Wood's own claims, which were nearly identical to those here, the contention that "inclusion of unlawfully processed absentee ballots diluted the weight of his vote . . . is a paradigmatic generalized grievance that cannot support standing," and "irregularities in the tabulation of election results" do not give standing because this "allegation, at bottom, remains that 'the law . . . has not been followed.'" *Wood v.*

*Raffensperger*, Case No. 20-14418, slip op. at 11-13 (11th Cir. Dec. 5, 2020) (citing *Dillard v. Chilton Cty. Comm'n*, 495 F.3d 1324, 1335 (11th Cir. 2007)).[5]

**D.    Plaintiffs' requested relief concerning the 2020 general election is moot.**

As the Eleventh Circuit held just this morning, even if Plaintiffs had standing, their requests for relief are barred by another jurisdictional defect: mootness. *See Wood v. Raffensperger*, Case No. 20-14418, slip op. at 2 (11th Cir. Dec. 5, 2020) (finding challenge to 2020 election results moot because Georgia has certified its election results). The Court is "not empowered to decide moot questions." *North Carolina v. Rice*, 404 U.S. 244, 246 (1971) (internal quotation marks omitted). "An issue is moot when it no longer presents a live controversy with respect to which the court can give meaningful relief." *Christian Coal. of Fla., Inc. v. United States*, 662 F.3d 1182, 1189 (11th Cir. 2011) (alteration rejected) (internal quotation marks omitted).

---

[5] For the reasons further articulated in Intervenors' Motion to Dismiss, ECF No. 20-2 at 8-12, Plaintiffs do not have prudential standing to assert their Elections and Electors Clause claims or (to the extent they plead one) their Equal Protection Clause claim based on purportedly unfair treatment towards third party election monitors. *See Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004) (a party's standing cannot "rest . . . on the legal rights or interests of third parties"). Plaintiffs rely on *Carson v. Simon*, 978 F.3d 1051 (8th Cir. 2020) for standing for their Elections and Electors Clause claims, but that case is a nonbinding outlier contradicted by the weight of authority. *See, e.g,. Bognet*, 2020 WL 6686120, at *7

Plaintiffs ask for several kinds of relief in their emergency motion and proposed order, *see* ECF No. 6 at 26-27 and ECF No. 6-3 at 3-4, but all of their requests flow from challenges to the 2020 election results. "Because Georgia has already certified its election results and its slate of presidential electors," Plaintiffs' "requests for emergency relief are moot to the extent they concern the 2020 election." *Wood*, No. 20-14418, slip op. at 2. The Court "cannot turn back the clock and create a world in which" the 2020 election results are not certified. *Id.* at 17 (citing *Fleming v. Gutierrez*, 785 F.3d 442, 445 (10th Cir. 2015)). Nor is it meaningful to order a new recount when the results are already final and certified. *See id.* (citing *Tropicana Prods. Sales, Inc. v. Phillips Brokerage Co.*, 874 F.2d 1581, 1582 (11th Cir. 1989)). The Court need not consider Plaintiffs' claims on the merits because their salient requests for relief are moot.

**E.    The Court lacks jurisdiction over Plaintiffs' election contest claim (Count V).**

Plaintiffs' Count V—in which Plaintiffs purport to state a claim under Georgia's election contest statute—cannot proceed in federal court. Georgia law is clear that an election contest "article shall be tried and determined by the superior court of the county where the defendant resides . . ." O.C.G.A. § 21-2-523(a).

**F.    Laches bars Plaintiffs' claims under the Elections and Electors Clause (Count I) and the Equal Protection Clause (Counts II and III).**

11

Laches bars a claim when "(1) there was a delay in asserting a right or a claim, (2) the delay was not excusable, and (3) the delay caused [the defendant] undue prejudice." *United States v. Barfield*, 396 F.3d 1144, 1150 (11th Cir. 2005). Each element of laches is satisfied as to Plaintiffs' Counts I-III.[6]

The gravamen of Plaintiffs' Elections and Electors Clause claim is that Defendants improperly exercised legislative power by adopting protocols regarding signature cure for absentee ballots and early processing of absentee ballots. Compl. ¶¶ 135-137. Yet these protocols, by Plaintiffs' own admission, were public for months before the election. *See id.* ¶ 51 (Settlement Agreement giving rise to cure procedures executed on March 6, 2020); *id.* ¶ 60 (early processing rule adopted in April 2020).

Plaintiffs delayed more than *eight months* in bringing this lawsuit; their delay is not excusable, nor does the Motion attempt to excuse it; and granting their requested relief of decertifying the election results would occasion tremendous prejudice for Defendants, Intervenors, and the public at large. *Accord Wood*, 2020 WL 6817513, at *7-8 (denying plaintiff's motion for temporary injunction on virtually identical facts and claims because of laches).

---

[6] It is unclear whether Plaintiffs even seek injunctive relief on Count I, as the Motion does not discuss Plaintiffs' Elections and Electors Clause claim. Laches bars the claim in any event.

12

In a similar vein, Plaintiffs' equal protection claims appear to contend that the rule allowing early processing of absentee ballots resulted in election procedures that violated Plaintiffs' equal protection rights. *See, e.g.*, Compl. ¶¶ 146-148 (Count II); *id.* ¶¶ 171-173 (Count III). For the same reasons, laches bars these claims, as well.

## G. Plaintiffs are not likely to succeed on the merits of their claims.

Plaintiffs' Complaint cobbles disparate legal theories into claims that are not cognizable. *See, e.g.*, ¶¶ 172-173 (asserting a Due Process Clause violation based on disparate treatment of voters that allegedly violates the Equal Protection Clause). And it purports to allege claims of constitutional violations without identifying any supporting legal theory. *See, e.g.,* ¶¶ 174-181 (ostensibly asserting a Due Process Clause claim without alleging any Due Process Clause violation). The Motion does the same. It states a series of "facts," many of which are bereft of any actual evidentiary support. S*ee* Mot. for TRO at 6-18. It then provides nearly five pages of citations to legal authority, without ever (1) relating a single "fact" to this legal discussion, or (2) applying the legal discussion to try to support the Complaint's claims. *See id.* at 20-25. From this, Plaintiffs summarily conclude they have established a likelihood of success on the merits. *Id.* at 24-25.

Plaintiffs have thus manifestly failed to carry their burden of demonstrating a substantial likelihood of success on the merits. Plaintiffs have not even advanced

13

*arguments* to support each of their (convoluted) claims, much less attempted to tie their "evidence" to specific claims. Plaintiffs' claims fail for this reason alone but, under any reading, they fail to establish a likelihood of success.

> **1.    Plaintiffs are not likely to succeed on their Elections and Electors Clause claim.**

Plaintiffs offer neither argument nor evidence to support their Elections and Electors Clause claim. The closest they come is asserting that Defendants failed to comply with statutory provisions governing State Election Board processes, absentee ballot processing and signature match requirements, and optical scan voting. *See* Mot. for TRO at 20-21. This is perhaps intended to support their claim that Defendants improperly exercised legislative power by adopting protocols regarding signature cure for absentee ballots and early processing of absentee ballots. Compl. ¶¶ 135-137. Plaintiffs' contention lacks merit.

The Elections and Electors Clause vest authority in "the Legislature" of each state to regulate "[t]he Times, Places, and Manner of holding Elections for Senators and Representatives," U.S. Const. art. I, § 4, cl. 1, and to direct the selection of presidential electors, U.S. Const. art. II, § 1, cl. 2, respectively. The Supreme Court has held, however, that state legislatures can delegate this authority—including to state officials like the Secretary. *See, e.g.*, *Ariz. State Legislature v. Ariz. Indep. Redistricting Comm'n*, 576 U.S. 787, 807 (noting Elections Clause does not preclude

14

"the State's choice to include" state officials in lawmaking functions so long as such involvement is "in accordance with the method which the State has prescribed for legislative enactments") (quoting *Smiley v. Holm*, 285 U.S. 355, 367 (1932)).

Pursuant to Georgia law, the Secretary is the chief election official for the State, O.C.G.A § 21-2-50(b); *see also Wood*, 2020 WL 6817513, at *2, and the General Assembly has granted him the power and authority to manage Georgia's election system, including the absentee voting system. *See Fair Fight Action, Inc. v. Raffensperger*, 413 F.Supp.3d 1251 (N.D. Ga. 2019); Ga. Op. Att'y Gen. No. 2005-3 (Apr. 15, 2005) (recognizing Secretary's authority to manage Georgia's election system). The Secretary is also the Chair of the Board, which is the governmental body responsible for uniform election practice in Georgia. O.C.G.A. § 21-2-31; *see also Curling v. Raffensperger*, 403 F. Supp. 3d 1311, 1345 (N.D. Ga. 2019) ("[T]he [] Board is charged with enforcing Georgia's election code under state law."). In both roles, the Secretary has significant statutory authority to set election standards. *See New Georgia Project v. Raffensperger*, No. 1:20-CV-01986-ELR, 2020 WL 5200930, at *8 (N.D. Ga. Aug. 31, 2020).

As the Judge Grimberg succinctly and correctly determined in rejecting a virtually identical challenge to the Elections and Electors Clause:

The Settlement Agreement is a manifestation of Secretary Raffensperger's statutorily granted authority. It does not override or

15

rewrite state law. It simply adds an additional safeguard to ensure election security by having more than one individual review an absentee ballot's information and signature for accuracy before the ballot is rejected. [Plaintiff] does not articulate how the Settlement Agreement is not "consistent with law" other than it not being a verbatim recitation of the statutory code. Taking [Plaintiff]'s argument at face value renders O.C.G.A. § 21-2-31(2) superfluous. A state official—such as Secretary Raffensperger—could never wield his or her authority to make rules for conducting elections that had not otherwise already been adopted by the Georgia General Assembly.

*Wood v. Raffensperger*, 2020 WL 6817513, at *10.

Plaintiffs have not demonstrated a likelihood of success on this claim.

## 2. Plaintiffs are not likely to succeed on their Equal Protection Clause claims.

Plaintiffs assert in the Motion that their "equal protection claim is straightforward," Mot. for TRO at 21, and then provide four pages of legal citations without once articulating the claim, *id.* at 21-24, or alleging facts or evidence to support it, *see id.* It appears from the Motion's lengthy discussion of alleged "fraud" and "ballot-stuffing," *id.* at 6-18, and select case law cites, that Plaintiffs are attempting to advance a vote dilution claim under Count II of their Complaint.[7] Cross-references to the Complaint support this reading. *See* Compl. ¶ 156 ("Defendants failed to comply with the requirements of the Georgia Election Code

---

[7] *See, e.g.*, *Baker v. Carr*, 369 U.S. 186, 208 (1962) (cited in Mot. for TRO at 22-23), and *Reynolds v. Sims*, 377 U.S. 533, 555 (1964) (cited in Mot. for TRO at 23).

and thereby diluted the lawful ballots of the Plaintiffs and of other Georgia voters and electors in violation of the United States Constitution guarantee of Equal Protection."). This is not an equal protection injury.

Vote dilution is a viable basis for federal claims only in certain contexts, such as when laws structurally devalue one community's votes over another's. *See, e.g.*, *Bognet*, 2020 WL 6686120, at *11 ("[V]ote dilution under the Equal Protection Clause is concerned with votes being weighed differently."). Courts have repeatedly rejected Plaintiffs' "conceptualization of vote dilution—state actors counting ballots in violation of state election law" as failing to state a concrete or cognizable harm under the Equal Protection Clause. *Id.* at *11; *see also Wood*, 2020 WL 6817513, at *8–10 (concluding vote-dilution injury is not "cognizable in the equal protection framework"), *aff'd*, Case No. 20-14418, slip op. at 12 (11th Cir. Dec. 5, 2020).

It is unclear whether Plaintiffs mean to separately argue that they will prevail on Count III of the Complaint, which asserts a confusing equal protection claim that is seemingly predicated on "disparate treatment" arising from the Settlement Agreement. Compl. ¶¶ 168-172. If so, that claim is baseless, too. The Settlement Agreement set forth "standards to be followed by the clerks and registrars in processing absentee ballots in the *State of Georgia*" as a whole, not across different counties. *Id.* ¶ 51 (emphasis added); *see also Wood*, 2020 WL 6817513, at *9

17

("Defendants applied the Settlement Agreement in a wholly uniform manner across the entire state. In other words, no voter . . . was treated any differently than any other voter."); *aff'd*, Case No. 20-14418, slip op. at 12-13 (11th Cir. Dec. 5, 2020). Judge Grimberg rejected this theory as insufficient to establish an equal protection violation, and this Court should, too.

### 3.   Plaintiffs are not likely to succeed on their due process claim.

Plaintiffs similarly fail to meaningfully develop any argument regarding their due process claim (Count IV). Neither the Motion nor the Complaint explain whether Plaintiffs advance a substantive or procedural due process claim (or both). The only relevant allegation in Count IV is that Georgia's "signature verification requirement is a dead letter." Compl. ¶ 181. Intervenors surmise that Plaintiffs may advance a procedural due process claim. Any such claim fails.

A procedural due process claim raises two inquires: "(1) whether there exists a liberty or property interest which has been interfered with by the State," and (2) "whether the procedures attendant upon that deprivation were constitutionally sufficient." *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). But Plaintiffs do not have a liberty or property interest in enforcing state election procedures, such as the signature verification requirement. *See Wood*, 2020 WL 6817513, at *11 ("The circuit court has expressly declined to extend the strictures

18

of procedural due process to 'a State's election procedures.'") (citing *New Ga. Project v. Raffensperger*, 976 F.3d 1278, 1282 (11th Cir. 2020)).

Even construing the allegations in the Complaint as a substantive due process claim (which Plaintiffs do not specifically assert) the Motion still falls short. It is well-settled that "[f]ederal courts should not 'involve themselves in garden variety election disputes.'" *Serpentfoot v. Rome City Comm'n*, No. 4:09-CV-0187-HLM, 2010 WL 11507239, at *16 (N.D. Ga. Mar. 3, 2010) (quoting *Curry v. Baker*, 802 F.2d 1302, 1315 (11th Cir. 1986) ("Only in extraordinary circumstances will a challenge to a state election rise to the level of a constitutional deprivation"). The sort of unconstitutional irregularity that courts have entertained under the Due Process Clause consists of widescale fraud and disenfranchisement. *See, e.g.*, *Bennett v. Yoshina*, 140 F.3d 1218, 1226-27 (9th Cir. 1998). But Plaintiffs' Complaint does not allege disenfranchisement at all. Rather, it seeks to disenfranchise millions of Georgian voters by "decertifying" the result.

Even assuming that Plaintiffs' fraud allegations could support a prima facie substantive due process claim—which, again, is a proposition that Plaintiffs have neither pleaded in the Complaint nor argued in the Motion—the allegations fail for want of proof. Indeed, Plaintiffs' fantastical allegations cannot withstand even cursory scrutiny. The Motion's assertions of election improprieties rest on two broad

19

and unsupported grounds: "fraud," Mot. for TRO at 6-11, and "ballot-stuffing," *id.* at 11-18. The "fraud" assertions are further subdivided into "fraud" identified in the absentee mail voting process by Plaintiffs' supposed experts—Russel Ramsland, Matthew Braynard, Dr. William Briggs, and Dr. Shiva Ayyadurai—and "fraud" identified in the recount process by Plaintiffs' lay affiants.[8] No credible evidence supports any of these claims.

As a threshold matter, none of the "experts" Plaintiffs rely on are qualified to offer their analyses and opinions, and the Court should exclude this evidence from consideration of the merits of the TRO on this basis alone. *Smith v. Ortho Pharm. Corp.*, 770 F. Supp. 1561, 1566 (N.D. Ga. 1991) ("For if the expert is not qualified, his or her opinion is inadmissible regardless of the content of the opinion.").[9] Plaintiffs' experts also utterly fail to explain how they developed their methods, what data they relied upon, or why that data is remotely reliable, which also warrants

---

[8] Plaintiffs also purport to have several additional "experts" supporting their claims, including Dr. Eric Quinnell (ECF No. 1-27 and 45-2); Dr. Stanley Young (ECF No. 45-2); Dr. Benjamin Overholt (ECF No. 45-3); and Ronald Watkins (ECF No. 31-1). Plaintiffs do not cite or rely on these "experts" in their Motion, so Intervenors do not address here the myriad problems with the qualifications, methods, and conclusions of these ostensible experts. *See Bumpers for Estate of Bumpers,* 2015 WL 13664949, at *2. However, these are addressed in the expert reports of Dr. Kenneth Mayer, and Dr. Jonathan Rodden and William Marble (*see* Callais Declaration and exhibits thereto) and in Intervenors' simultaneously filed Daubert motion.

[9] *See* note 8 *supra.*

20

disregarding their opinions in full.[10] Moreover, Intervenors' rebuttal experts comprehensively and conclusively identify the problems with Plaintiffs' experts' specious data, analyses, and conclusions. *See* Callais Decl., Ex. 1, ¶ 4 (Dr. Stephen Ansolabehere Response to Braynard) ("None of [Braynard's] claims meets scientific standards of my fields of research, including survey research, political science, statistics and data sciences. There is no scientific basis for drawing any inferences or conclusions from the data presented."); *id.* Ex. 2, ¶ 2 (Ansolabehere Response to Briggs) (Dr. Briggs' "errors in [survey] design, analysis, and interpretation of the data are so massive that there is no foundation for drawing any conclusions or inferences" from this report; *id.* Ex. 3, at 2 (Expert Report of Dr. Jonathan Rodden) (Ramsland, Quinnell, and Ayyadurai's reports "do not meet basic standards for scientific inquiry," only "identify common and easily explained patterns in the 2020 election results," "lack even a basic level of clarity or transparency about research methods," and are "based on puzzling but serious mistakes and misunderstandings about how to analyze election data"); *id.* Ex. 4 at 1, 4 (Expert Report of Dr. Kenneth R. Mayer) (Ramsland's conclusion that "at least 96,600 votes were illegally counted" rests on his inexcusably "mistaken[] claim[]" that "the ballot status field"

---

[10] *See* note 8 *supra.*

"C" means "counted," when in actually means "cancelled"; in reality, this number

is 4, which is "obviously a recordkeeping issue.").

The assertions of "fraud" in the recount process from Plaintiffs' lay affiants

fare no better, in which they recycle allegations that were inadequate for injunctive

relief in *Wood*. The incidents Plaintiffs complain of—not seeing anyone verify

signatures on ballots, ECF No. 1-19 at 5; not receiving a call back from the

Secretary's voter fraud line, ECF No. 1-20 at 3; and isolated discrepancies in ballot

placements or ballot recounts, *id.* at 4, ECF No. 1-19 at 5, and ECF No. 1-22 at 9—

reflect misunderstandings of Georgia state law regarding signature verification and

"garden variety" ordinary disputes that would occur in any hand recount. To the

extent that the affidavits insinuate "pristine" ballots or sightings of counterfeit

ballots based on illegitimate watermarks, *see* ECF No. 1-21 at 3, this is nothing more

than mere speculation and uninformed opinions of an individual who is unfamiliar

with Georgia elections, which is rebutted in the *same paragraph* of the declaration.

*Id.* ("I challenged this and the Elections Director said it was a legitimate ballot and

was due to the use of different printers.").[11]

---

[11] Intervenors' own evidence counteracts these allegations in any event. *See* Intervenors' Notice of Filing, Ghazal Aff., ¶ 41 and Brandon Aff. ¶ 15 (explaining reasons for differences in size, feel, and appearance of various ballots being counted during hand recount); *see also* Notice of Filing, Exs. 1-13 (setting forth the affidavits

Plaintiffs' allegations of "ballot-stuffing," which are equally meritless, are predicated almost entirely on dark insinuations of what *could* have happened in a fevered alternative reality rife with election fraud. *See, e.g*., Mot. for TRO at 12-13 (alleging possibility of "manipulation of votes," without evidence, during the time that Fulton County experienced a leaking pipe at its election tabulation site); *id.* at 13-14 (asserting that Dominion voting machines are capable of being manipulated, without evidence that they were, in fact, manipulated); *id.* at 14-15 (discussing FBI acknowledgment of foreign attempts to access voter registration data, without evidence that these attempts affected Georgia's election in any way). Plaintiffs point to ostensible security concerns motivating Texas to decline to use Dominion voting machines, which is irrelevant to whether there was actually any fraud in Georgia. *Id.* at 15. Plaintiffs say Defendants "ignored" *U.S.* House Bill 2722, which died in the *U.S.* Senate; it is unclear what Defendants should have done to "respond" to this proposed federal legislation. *Id*. at 15-16. And interestingly, nearly all of Plaintiffs' requested relief has to do with *absentee ballots,* not Dominion machines.

Plaintiffs' discussion of Dr. Andrew Appel's comments regarding Dominion voting machines, *see Id*. at 16, borders on outright misrepresentation. The Motion

---

of thirteen credentialed observers that the recounts were conducted fairly and in accordance with the procedures that the Secretary and Board promulgated).

cross-references Paragraph 13 of the Complaint as the source of Dr. Appel's comments. *Id.* at 16. Paragraph 13 in turn references Exhibit 7 (ECF No. 1-8), which is a study regarding voting machines authored by Dr. Appel. Yet *the study does not contain the quote set forth in the Motion*. Instead, the quote originated from a November 13, 2020, Fox News segment aired by Sean Hannity, in which Dr. Appel is quoted from 2018 discussing *older* Dominion voting machines—different from the machines presently used in Georgia, which do not have the security vulnerability Dr. Appel was discussing in 2018.[12] For perhaps obvious reasons, Plaintiffs have not actually tried to substantiate Dr. Appel's quote with evidence in the Motion.

Plaintiffs have failed to establish a substantial likelihood of success on the merits for their due process claim.

## H.   Plaintiffs do not establish irreparable harm.

As discussed in Sections C-F *supra*, Plaintiffs bring, at most, generalized grievances or third-party claims, based on wholly implausible allegations, and supported with threadbare evidence. As such, they cannot demonstrate that they will suffer any harm at all. In contrast, Plaintiffs' requested relief would cause irreparable injury by depriving between one and five million Georgians of their votes. *See*

---

[12] Dr. Andrew Appel, *Did Sean Hannity misquote me?*, Freedom to Tinker (November 13, 2020), https://freedom-to-tinker.com/2020/11/13/did-sean-hannity-misquote-me/.

*Gonzalez v. Governor of Georgia*, 978 F.3d 1266 (11th Cir. 2020) (noting that depriving even a single individual of his right to vote would cause irreparable harm).

I.     **The balance of the equities and public interest weigh against a preliminary injunction.**

The threatened injury to Defendants as state officials, Intervenors, and the public at large far outweigh any harm to Plaintiffs. As the *Wood* court found under virtually identical circumstances, Plaintiffs "seek[] an extraordinary remedy: to prevent Georgia's certification of the votes cast in the General Election, after millions of people had lawfully cast their ballots. To interfere with the result of an election that has already concluded would be unprecedented and harm the public in countless ways. Granting injunctive relief here would breed confusion, undermine the public's trust in the election, and potentially disenfranchise [] over one million Georgia voters." *Wood*, 2020 WL 6817513, at *13 (citation omitted).

## IV.   CONCLUSION

For these reasons, Intervenors request that the Court deny Plaintiff's Emergency Motion for Injunctive Relief.

Dated: December 5, 2020.                    Respectfully submitted,

**Adam M. Sparks**
Halsey G. Knapp, Jr.
Joyce Gist Lewis
Susan P. Coppedge
Adam M. Sparks
**KREVOLIN AND HORST, LLC**
One Atlantic Center
1201 W. Peachtree Street, NW, Ste. 3250
Atlanta, GA 30309
Telephone: (404) 888-9700
Facsimile: (404) 888-9577
hknapp@khlawfirm.com
jlewis@khlawfirm.com
coppedge@khlawfirm.com
sparks@khlawfirm.com

Marc E. Elias*
Amanda R. Callais*
**PERKINS COIE LLP**
700 Thirteenth Street, N.W., Suite 800
Washington, D.C. 20005-3960
Telephone: (202) 654-6200
Facsimile: (202) 654-6211
MElias@perkinscoie.com
ACallais@perkinscoie.com

Kevin J. Hamilton*
Amanda J. Beane*
**PERKINS COIE LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone: (206) 359-8000
Facsimile: (206) 359-9000
KHamilton@perkinscoie.com
ABeane@perkinscoie.com

Matthew J. Mertens*
Georgia Bar No: 870320
**PERKINS COIE LLP**
1120 NW Couch Street, 10th Floor
Portland, OR 97209
Telephone: (503) 727-2000
Facsimile: (503) 727-2222
MMertens@perkinscoie.com

*Counsel for Intervenors-Defendants*

*\*Admitted Pro Hac Vice*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| CORECO JA'QAN PEARSON, VIKKI TOWNSEND CONSIGLIO, GLORIA KAY GODWIN, JAMES KENNETH CARROLL, CAROLYN HALL FISHER, CATHLEEN ALSTON LATHAM, and BRIAN JAY VAN GUNDY, <br><br> Plaintiffs, <br><br> v. <br><br> BRIAN KEMP, in his official capacity as Governor of Georgia, BRAD RAFFENSPERGER, in his official capacity as Secretary of State and Chair of the Georgia State Election Board, DAVID J. WORLEY, in his official capacity as a member of the Georgia State Election Board, REBECCA N. SULLIVAN, in her official capacity as a member of the Georgia State Election Board, MATTHEW MASHBURN, in his official capacity as a member of the Georgia State Election Board, and ANH LE, in her official capacity as a member of the Georgia State Election Board, <br><br> Defendants. | CIVIL ACTION FILE NO. 1:20-cv-04809-TCB |

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing document has been prepared in accordance with the font type and margin requirements of L.R. 5.1, using font type of Times New Roman and a point size of 14.

Dated: December 5, 2020.                    **<u>Adam M. Sparks</u>**
                                             *Counsel for Intervenor-Defendants*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| CORECO JA'QAN PEARSON, VIKKI TOWNSEND CONSIGLIO, GLORIA KAY GODWIN, JAMES KENNETH CARROLL, CAROLYN HALL FISHER, CATHLEEN ALSTON LATHAM, and BRIAN JAY VAN GUNDY,<br><br>       Plaintiffs,<br><br>v.<br><br>BRIAN KEMP, in his official capacity as Governor of Georgia, BRAD RAFFENSPERGER, in his official capacity as Secretary of State and Chair of the Georgia State Election Board, DAVID J. WORLEY, in his official capacity as a member of the Georgia State Election Board, REBECCA N. SULLIVAN, in her official capacity as a member of the Georgia State Election Board, MATTHEW MASHBURN, in his official capacity as a member of the Georgia State Election Board, and ANH LE, in her official capacity as a member of the Georgia State Election Board,<br><br>       Defendants. | CIVIL ACTION FILE NO. 1:20-cv-04809-TCB |

# CERTIFICATE OF SERVICE

I hereby certify that on December 5, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

Dated: December 5, 2020.                    **Adam M. Sparks**
                                            *Counsel for Intervenor-Defendants*