[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-14480
_____

D.C. Docket No. 1:20-cv-04809-TCB

CORECO JA'QUAN PEARSON, et al.,

                Plaintiff - Appellants,

versus

BRIAN KEMP, et al.,

                Defendant - Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(December 4, 2020)

Before WILSON, ROSENBAUM, and BRASHER, Circuit Judges.

BRASHER, Circuit Judge:

  This appeal arises from last-minute litigation that alleges widespread election-related misconduct and seeks sweeping relief. The issue before us, however, is a narrow question of appellate jurisdiction: has the district court entered an order that

we have jurisdiction to review? Because the answer to that question is "no," we must dismiss this appeal for lack of jurisdiction and allow the proceedings to continue in the district court.

## I.   BACKGROUND

The plaintiffs in this case are a group of Presidential Electors from Georgia. On the Wednesday before Thanksgiving, they sued Georgia's Governor, its Secretary of State, and other defendants. They asserted that Georgia's certified 2020 Presidential Election results were suspect because of alleged vulnerabilities in Georgia's election machines and alleged mathematical and statistical anomalies in the vote count. Two days later—the Friday after Thanksgiving—the plaintiffs filed a motion for injunctive relief, seeking (1) a temporary restraining order preventing the defendants from erasing or altering forensic data on voting machines, (2) an injunction de-certifying the Presidential election results, or alternatively a stay in the delivery of the certified results to the Electoral College, and (3) an injunction making the voting machines available to the plaintiffs for forensic analysis.

The district court took the complaint and motion seriously and, on Sunday night, held a hearing on the plaintiffs' motion via Zoom. There, the plaintiffs' counsel explained that the evidence the plaintiffs hoped to collect from Georgia's voting machines might be permanently lost if the defendants were not immediately enjoined from altering the machines, since those machines needed to be recalibrated

for upcoming state and local runoff elections. Rather than waiting for a ruling on the motion for injunctive relief that covered ten counties, the plaintiffs proposed that the district court order "very limited" relief in "two or three counties." This solution would allow the plaintiffs to quickly collect the data they sought without impeding the runoff elections. The district judge agreed with the plaintiffs, and said that he would "order and temporarily restrain the Defendants . . . from altering or destroying or erasing[,] or allowing the alteration, destruction, or erasing of any of the computer information on any of the [voting] machines" in Cobb, Gwinnett, and Cherokee Counties.

True to his word, the district judge issued a written temporary restraining order on Sunday night that gave the plaintiffs what they said they wanted. That order enjoined the defendants from erasing or altering data on voting machines in the three counties listed above. It also ordered the defendants to produce a copy of the contract between the State of Georgia and Dominion Voting Systems. Two follow-up orders set an expedited evidentiary hearing for the morning of December 4, 2020 on the broader relief requested in the plaintiffs' motion and certified that the Sunday night order contained the elements required for a permissive appeal under 28 U.S.C. § 1292(b).

A few days later, the plaintiffs filed a notice of appeal as to the district court's Sunday night order. As a result, the district court canceled the hearing on the broader

relief the plaintiffs had requested. The defendants filed a conditional cross-appeal. Later, the plaintiffs also requested permission to appeal in this Court under 28 U.S.C. § 1292(b).

## II.   DISCUSSION

In our judicial system, the district court is the central forum for testing, advancing, proving, or disproving a party's allegations. It is where trials take place and the parties present their evidence. As a court of appeals, "we are a court of review, not of first view." *Cutter v. Wilkinson*, 544 U.S. 709, 718, n.7 (2005). Typically, we enter the picture only after the district court has considered the parties' competing positions and a winner has emerged. Less frequently, we review preliminary injunctions or orders that ask a particularly important, purely legal question.

The district court has not issued one of those appealable orders. In this case, the district court issued an emergency temporary restraining order at the plaintiffs' request, worked at a breakneck pace to provide them an opportunity for broader relief, and was ready to enter an appealable order on the merits of their claims immediately after its expedited hearing on December 4, 2020. But the plaintiffs would not take the district court's "yes" for an answer. They appealed instead. And, because they appealed, the evidentiary hearing has been stayed and the case

considerably delayed. For our part, the law requires that we dismiss the appeal and return the case to the district court for further proceedings.

### A. The Sunday night order is not appealable under 28 U.S.C. §§ 1291 or 1292(a)(1)

We begin with the obvious: we cannot exercise our customary appellate jurisdiction because the district court has not entered a final judgment. *See* 28 U.S.C. § 1291. A final judgment is a decision that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Ray Haluch Gravel Co. v. Centr. Pension Fund of Operating Eng'rs and Participating Emp'rs*, 571 U.S. 177, 183 (2014). An appeal from a final judgment may be taken as a matter of right. *Gelboim v. Bank of Am. Corp.*, 574 U.S. 405, 407 (2015).

The plaintiffs concede no final judgment has been entered in this case. Instead, the plaintiffs argue that the district court's Sunday night order is immediately appealable as an order denying their request for a temporary restraining order. The plaintiffs argue that that—even though the Sunday night order granted their request for a temporary restraining order in part and did not, on its face, deny anything—the order *effectively* denied their request because of the exigent circumstances involved. This argument fails for three reasons.

First, the district court's order does not deny the plaintiffs their requested relief at all. The plaintiffs filed their motion on the Friday after Thanksgiving. The district court held an emergency hearing over the weekend and, on Sunday,

5

November 29th, entered a TRO granting the plaintiffs' request in part. Notably, this Sunday night order gave the plaintiffs almost exactly what their counsel proposed as a temporary solution at the hearing: it "identif[ied] a very limited . . . number of counties" and enjoined the defendants from erasing or altering data contained on Dominion voting machines in those counties, thus, preserving them for future inspection. The district court then set an expedited briefing schedule and an emergency evidentiary hearing for December 4th. The purpose of the briefing schedule was to allow the defendants an opportunity to respond to the plaintiffs' allegations. And the purpose of the evidentiary hearing was to allow the plaintiffs to support their allegations with evidence and, potentially, to win the injunctive relief that they were seeking. Nothing about that chain of events suggests an adverse ruling on the plaintiffs' motion.

Second, even if the district court's order were properly construed as the denial of the plaintiffs' request—again, ignoring the fact that it did not deny anything—we do not ordinarily have jurisdiction over TRO rulings. *McDougald v. Jenson*, 786 F.2d 1465, 1472 (11th Cir. 1986). We exercise appellate jurisdiction over TRO decisions only "when a grant or denial of a TRO might have a serious, perhaps irreparable, consequence, and can be effectually challenged only by immediate appeal[.]" *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225 (11th Cir. 2005) (quoting *Ingram v. Ault*, 50 F.3d 898, 900 (11th Cir.1995)). This is a high hurdle for

appellants to clear, and our caselaw provides for emergency appeals from TRO decisions only in the direst of circumstances. In *Ingram*, we permitted an appeal where a prisoner was set to be executed within twenty-four hours of a TRO being denied. *Ingram*, 50 F.3d at 899-900. In *Schiavo*, we permitted an appeal where a court denied a TRO that would have put a terminally ill patient back on life support. *Schiavo*, 403 F.3d at 1225.

The plaintiffs here are not in the same position as an inmate about to be executed or a patient removed from life support. The "irreparable" harm threatened here is that voting machines will be "wiped," erasing the data they contain and preventing the plaintiffs from conducting the forensic inspection they request. But the plaintiffs have not demonstrated that the alleged harm is imminent—that the defendants would have wiped all these machines county-by-county, destroying all the data they contain, unless the district court had granted broader relief on Sunday night. In fact, the district court's order was specifically designed to avoid this consequence by enjoining the defendants from erasing or altering data on the machines in three counties. It preserved the status quo in a way that gave the plaintiffs what they said they wanted and was minimally disruptive to the State of Georgia's ability to conduct special run-off elections in other counties. Nothing compelled an immediate appeal: had the plaintiffs not appealed the district court's Sunday night order, the district court would have held the evidentiary hearing it set

for December 4th and, by now, would likely have ruled on the plaintiffs' broader request for injunctive relief. Afterwards, the plaintiffs could have appealed.

Third, and for many of the same reasons, the district court's Sunday night order was not an appealable preliminary injunction order masquerading as a ruling on a request for a TRO. To determine whether an order denominated as a TRO is actually an appealable decision on a preliminary injunction, we review certain factors including "the duration of the order" and "the extent of evidence submitted to the district court." *Cuban Am. Bar Ass'n, Inc. v. Christopher*, 43 F.3d 1412, 1422 (11th Cir. 1995). The Sunday night order lacks the hallmarks of a preliminary injunction ruling. It does not engage the traditional four-factor test for granting preliminary injunctions. Its duration is limited to ten days. And, although some evidence has been submitted to the district court, no live witnesses have testified, no discovery has been conducted, and the defendants have not even had a chance to file a response to the complaint.

**B. The Sunday night order is not appealable under 28 U.S.C. § 1292(b)**

Alternatively, the plaintiffs ask that we permit them to appeal under 28 U.S.C. § 1292(b). Where no other avenue of appeal is open, Section 1292(b) allows a court of appeals to exercise jurisdiction under certain specified conditions. *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 883 (1994). Review under this statute was "intended, and should be reserved, for situations in which the court of appeals

can rule on a pure, controlling question of law without having to delve beyond the surface of the record in order to determine the facts" and should not, in contrast, turn on case-specific inquiries, such as "whether the district court properly applied settled law to the facts or evidence of a particular case." *McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1259 (11th Cir. 2004). This Court has identified five conditions necessary for it to consider an issue in an interlocutory appeal under Section 1292(b): "(1) the issue is a pure question of law, (2) the issue is controlling of at least a substantial part of the case, (3) the issue was specified by the district court in its order, (4) there are substantial grounds for difference of opinion on the issue, and (5) resolution may well substantially reduce the amount of litigation necessary on remand." *Mamani v. Berzain*, 825 F.3d 1304, 1312 (11th Cir. 2016) (quotation marks omitted).

This avenue of appellate jurisdiction is also closed. The case does not meet our criteria for Section 1292(b) interlocutory review for at least three reasons.

First, Section 1292(b) does not countenance an interlocutory appeal at this point in the case. The district court's Sunday night order was entered after only a weekend's worth of litigation and does not conclusively answer any legal questions. *Cf. Ray v. American Nat. Red Cross*, 921 F.2d 324, 325 (D.C. Cir. 1990) (no appeal when the district court certified the question under § 1292(b) without first deciding it). Perhaps for that reason, the order certifies that the case involves a

controlling question of law but does not identify what that question is. *See McFarlin*, 381 F.3d at 1264 ("If the district court is unsure about which of the questions, if any, that are answered by its order qualify for certification under § 1292(b), it should not certify the order for review. If convinced that a particular question does qualify, the district court should tell us which question it is."). And, most problematic in our view, the parties intended to present more evidence on the issues addressed in the district court's order, and the district court scheduled briefs and a hearing to allow it. We cannot use Section 1292(b) to "offer advisory opinions rendered on hypotheses which evaporate in the light of full factual development." *Paschall v. Kansas City Star Co.*, 605 F.2d 403, 406 (8th Cir. 1979) (cleaned up).

Second, we are not convinced the primary question the plaintiffs suggest we answer—whether county-level election officials are the proper defendants to redress the plaintiffs' alleged injuries—is a "pure or abstract legal question" that can be "stated at a high enough level of abstraction to lift the question out of the details of the evidence or facts of a particular case." *McFarlin*, 381 F.3d at 1259, 1262. This issue goes to the redressability element of standing. "Standing for Article III purposes requires a plaintiff to provide evidence of an injury in fact, causation and redressability." *Dermer v. Miami-Dade Cnty.*, 599 F.3d 1217, 1220 (11th Cir. 2010). A court must assess standing by making "a legal determination based on the facts established by the record." *Church of Scientology Flag Serv. Org., Inc. v. City of*

*Clearwater*, 777 F.2d 598, 607 n.24 (11th Cir. 1985). The facts have played a role in evaluating redressability in other election litigation,[1] and they could also play a role here. Because the plaintiffs' appeal asks us to apply "settled law to the facts or evidence of [this] particular case," it is "the antithesis of a proper § 1292(b) appeal." *McFarlin*, 381 F.3d at 1259.

Third, a decision about whether the plaintiffs need to sue county officials will not cut short the case. If the answer is that the plaintiffs do not need to add these defendants, then the case will continue as is. If the answer is that the plaintiffs must add these defendants, the case will continue with additional defendants. We have "little doubt that a question is not controlling" if the litigation "can readily be accommodated to whatever ruling is made." 16 C. Wright & A. Miller, Federal Practice & Procedure § 3930 (3d ed. 2020).

### III.   CONCLUSION

Because we lack jurisdiction, the appeal is **DISMISSED** and the motion for permissive appeal is **DENIED**. Because we must dismiss this appeal, the defendants' conditional cross appeal is also **DISMISSED**. Any other pending motions are **DENIED AS MOOT**.

---

[1] Both parties cite our recent decision in *Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236 (11th Cir. 2020), where the Florida Secretary of State argued that she could not remedy the alleged problem and we held that "no contrary evidence" established otherwise. *Id.* at 1253. *See also id.* at 1254 ("absence of any evidence"), 1255 ("not proved"), 1255 ("not established"), 1257 ("no contrary evidence").

**UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

December 04, 2020

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number: 20-14480-RR
Case Style: Coreco Pearson, et al v. Gov. of the State of Georgia, et al
District Court Docket No: 1:20-cv-04809-TCB

**This Court requires all counsel to file documents electronically using the Electronic Case Files ("ECF") system, unless exempted for good cause. Non-incarcerated pro se parties are permitted to use the ECF system by registering for an account at www.pacer.gov. Information and training materials related to electronic filing, are available at www.ca11.uscourts.gov.** Enclosed is a copy of the court's decision filed today in this appeal. Judgment has this day been entered pursuant to FRAP 36. The court's mandate will issue at a later date in accordance with FRAP 41(b).

The time for filing a petition for rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise provided by FRAP 25(a) for inmate filings, a petition for rehearing or for rehearing en banc is timely only if received in the clerk's office within the time specified in the rules. Costs are governed by FRAP 39 and 11th Cir.R. 39-1. The timing, format, and content of a motion for attorney's fees and an objection thereto is governed by 11th Cir. R. 39-2 and 39-3.

Please note that a petition for rehearing en banc must include in the Certificate of Interested Persons a complete list of all persons and entities listed on all certificates previously filed by any party in the appeal. See 11th Cir. R. 26.1-1. In addition, a copy of the opinion sought to be reheard must be included in any petition for rehearing or petition for rehearing en banc. See 11th Cir. R. 35-5(k) and 40-1 .

Counsel appointed under the Criminal Justice Act (CJA) must submit a voucher claiming compensation for time spent on the appeal no later than 60 days after either issuance of mandate or filing with the U.S. Supreme Court of a petition for writ of certiorari (whichever is later) via the eVoucher system. Please contact the CJA Team at (404) 335-6167 or cja_evoucher@ca11.uscourts.gov for questions regarding CJA vouchers or the eVoucher system.

For questions concerning the issuance of the decision of this court, please call the number referenced in the signature block below. For all other questions, please call Regina A. Veals-Gillis, RR at (404) 335-6163.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to: Jeff R. Patch
Phone #: 404-335-6151

OPIN-1 Ntc of Issuance of Opinion

20-14480  Pearson, et al. v. Governor of Georgia, et al.

ERRATA:

Corrected spelling of "Presidential" on p. 2.